SEIBERT, by Guardian *ad litem,* and another, Appellants, vs. MORRIS and wife, Respondents.

*April 12—May 11, 1948.*

For the appellants there were briefs by *Kersten & Mc-Kinnon,* attorneys, and *J. P. McKinnon* of counsel, all of Milwaukee, and oral argument by *Arlo McKinnon* and *J. P. McKinnon.*

For the respondents there was a brief by *Spence & Hanley,* attorneys, and *William P. McGovern* of counsel, all of Milwaukee, and oral argument by *Mr. Arthur T. Spence* and *Mr. McGovern.*

WICKHEM, J. The facts of this case are not in serious dispute. Defendants' home is on Shoreland avenue in the city of Milwaukee and faces east. Immediately south of the home is a driveway consisting of two strips of concrete with a grass boulevard ending in a concrete apron immediately to the front of a one-car garage located at the southwest corner of the defendants' lot. Immediately south of the driveway and garage was a garden extending to the rear lot line of adjoining property. The garden was what was called a "victory garden" and was worked by three families, one of them the defendants. The garden was sectioned into three parts, each approximating thirty by thirty feet in extent and was some three feet below the level of defendants' property. The garden thus ran along and below the concrete strips. To the north of the garage and west of the house was a yard, approximately as wide and long as defendants' house. At the time of the accident the garage was empty and the sliding-type door was open. William, the son of defendants, was fourteen years of age. He had sustained an injury to his leg, had been on

crutches for several weeks, and was not able to leave his own yard. He had acquired possession of an adult bow and arrow belonging to his father and for a time on the day of the accident was shooting at a paper target. Some younger children came into the yard and at their request he began to shoot arrows into the air. Tommy Seibert, one of the plaintiffs, arrived in defendants' yard at about 6:45 p. m., and was present with four or five other youngsters. Tommy was ten years old. A neighbor was alone in the victory garden standing about twenty feet from the place where the accident happened. When William shot the arrow up in the air he stood in front of the garage about one foot east of the door line and before he shot each arrow he required the children to go into the garage or get under a table just outside the garage. One of the boys who was wearing a helmet used the table and the rest, including Tommy, went into the garage. While he was shooting the arrow Mrs. Morris came out of the rear side door of the house and asked William if he didn't think he should put the bow away in the basement. He said, "No, the kids are going under the table or in the garage and they won't get hurt." She said "All right" or something of the sort and went into the garden to talk to her neighbor who was picking beans. William continued to shoot the arrow and the boys each time retreated to the garage or got under the table while he shot. The arrow would land at a different place after each shot. During the time all the shooting was going on the wife of defendant was in the garden visiting with her neighbor and was about twenty feet away. The accident happened when Tommy stuck his head out of the garage and looked. The arrow struck him a glancing blow in the eye.

The bow had been purchased by defendant, Morris, and was kept in the basement of the home in a closed but unlocked cupboard behind a tackle case and some rolls of wallpaper. At the time when defendant bought the bow used at the time of the accident he also purchased a twenty-pound children's bow

for William.   The adult bow had a pull of about forty pounds. Morris had informed the sons that archery equipment was never to be used except on an archery range.   The cupboard in the basement where the bow was stored was six feet, seven and one-half inches from the ground and the bow was not visible because of various items stored in front of it.   Morris was out of the city at the time of the accident.

We might well start this case with the duty of the parents. Restatement, 2 Torts, pp. 858, 859, sec. 316, states:

"A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control."

"Comment:

"*a*. . . . This duty is not peculiar to a father.   It extends to the mother also in so far as her position as mother gives her an ability to control her child.   *b*. The duty of a parent is only to exercise such ability to control his child as he in fact has at the time when he has the opportunity to exercise it and knows the necessity of so doing. . . ."

We shall consider the liability of defendants separately. The trial court was correct in concluding that the father was not negligent.   To say that a parent cannot have in his possession a bow and arrow which he keeps nearly seven feet from the floor behind other articles in a closed closet when he has given his child training in archery and has instructed him never to use the bow except at an archery range is to put an undue burden upon ordinary operations of family life.   When it is also considered that he was out of town at the time and had no immediate control of the situation we see no ground for imposing any liability upon the father.   See *Hopkins v. Droppers,* 191 Wis. 334, 210 N. W. 684; *McGee v. Hahn,* 192 Wis. 121, 212 N. W. 66; *Christiansen v. Ætna Casualty*

*& Surety Co.* 204 Wis. 323, 236 N. W. 109. The only ground of liability which could be argued in respect of the mother is that she saw the situation and did not stop the operation. In view of the fact that she had no expert knowledge of the bow and arrow and that it appeared to her that the boys were required to seek cover before each shot was made we discover no negligence on her part. In point of fact, it would be difficult to attribute negligence to William. He exercised great care to get the youngsters under cover each time he shot the arrow. On the numerous occasions when the arrow had been shot the children obeyed and he could hardly anticipate that one of them would disobey instructions after such an interval.

Under the circumstances we consider that the doctrine of *Canzoneri v. Heckert,* 223 Wis. 25, 269 N. W. 716, is applicable and that the conduct of the parents could not constitute a cause of the plaintiff's injury.

*By the Court.*—Judgment affirmed.