GERLAT, by Guardian *ad litem,* and another, Respondents, v. CHRISTIANSON, Appellant.

*February 7—March 7, 1961.*

For the appellant there was a brief by *Gruhle, Fessler, Wissbroecker & Van de Water* of Sheboygan, and oral argument by *Jacob A. Fessler* and *Douglas K. Van de Water.*

For the respondents Gerlat there was a brief by *John R. Holden, Arthur J. Olsen,* and *Holden & Schlosser,* all of Sheboygan, and oral argument by *John R. Holden.*

MARTIN, C. J.   John Christianson's negligence was submitted to the jury on a three-part question as to:

"(a) Knowingly permitting the use of said gun by his son in the basement under existing conditions?

"(b) Knowingly permitting the use of such gun by his son in the basement without proper supervision?

"(c) Failing to exercise proper control of the use of said gun?"

All three questions were answered "Yes" by the jury, as were corresponding questions on causation. Appellant, John Christianson, maintains that those issues were not for the jury.

The duty of parents is set out in *Seibert v. Morris* (1948), 252 Wis. 460, 463, 32 N. W. (2d) 239, quoting the rule of Restatement, 2 Torts, pp. 858, 859, sec. 316:

" 'A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control.

" 'Comment: . . .

" '*b*. The duty of a parent is only to exercise such ability to control his child as he in fact has at the time when he has the opportunity to exercise it and knows the necessity of so doing.' "

The injury in the *Seibert Case* occurred when the Morris boy obtained possession of his father's bow and arrow and was shooting in the air in the presence of some younger children, of which the injured boy was one. The bow had been kept in the basement of the Morris home in a cupboard seven feet from the ground; it was stored out of sight behind various other items. Mr. Morris had instructed his son that the archery equipment was never to be used except on an archery range. At the time of the accident he was out of the city. Under the rule stated, this court held there was no ground for imposing liability upon the father under those circumstances. The mother was exonerated, although she saw what was going on, because she knew nothing about bows and arrows and noticed the children took cover before each shot was made.

In a second case cited by appellant, *Pawlak v. Mayer* (1954), 266 Wis. 55, 62 N. W. (2d) 572, plaintiff's son was hit in the eye by a pellet from an air rifle fired by defendant's son. The trial court directed a verdict and entered judgment dismissing the complaint on the following facts:

Shortly after the Mayer boy acquired the air rifle the father took it away from him because he had used it to shoot at street lights. The father hid the gun in the attic and forbade his son to use it. Just prior to the accident, when Mayer saw his son and other boys playing in the yard, he saw an air rifle in the hands of one of the boys but did not know it belonged to his son. This court affirmed the judgment, holding that under the circumstances the father could not have reasonably anticipated his son would violate his instructions and use the gun.

Under the particular circumstances of each of those cases, it was clear that the parent had done all he could do to control the child at the time he had the opportunity and knew the necessity of doing so. Those cases are clearly distinguishable from the instant one. In each case the father had stored the instrument in a place not easily accessible to the child with instructions that it not be removed or used in the manner in which it was used at the time of injury. In neither case did the father know that the son had taken the instrument from its storage place, contrary to instructions.

Here was a boy ten years old. His father instructed him carefully as to where and how the gun should be used, including the direction never to point it at anyone. He instructed his son's playmates to the same effect. But the gun was kept where it was readily accessible to the son or, for that matter, to any of his playmates, and the children were not prohibited from playing with it so long as either Mr. or Mrs. Christianson was on the premises. Under the facts here—the age of the children, the size and arrangement of the basement playrooms, the accessibility of the gun, its permitted use without personal supervision of an adult, the presence of the father in the house without ascertaining that the gun was being used—it was a jury question whether John Christianson was negligent.

Appellant relies on *Harris v. Cameron* (1892), 81 Wis. 239, 51 N. W. 437, where this court held that an air gun is not a "gun" or a "weapon," but a toy not within the contemplation of the statutes referring to "any toy pistol, toy revolver, or other firearm" since firearms are weapons which act by the force of gunpowder. The only question involved in that case was whether the purchase and presentation of an air gun by the father to his son constituted negligence. Aside from the fact that that question is not involved here, the trial court properly held that the classification of an air gun as a toy has been changed by secs. 940.24 and 941.20, Stats., which put air guns in the same category as firearms.

The distinction is immaterial in this case, however, since the father's negligence does not depend on the character of the instrument by which the injury is inflicted but on the evidence from which it can be reasonably concluded that he failed to exercise such control as he had over the boy's use of the gun.

*By the Court.*—Judgment affirmed.