RAYMOND L. PAYNE, District Attorney, Douglas County
Your predecessor had requested my opinion on two questions concerning the liability of the Douglas County Department of Social Services and foster parents for damage done by children placed in foster homes.
First, he inquired whether the Douglas County Department of Social Services (hereinafter, the county department) could be held *Page 165 
liable for damage done to a foster home, or any other premise or facility, by a foster child in the department's legal custody.
Second, he inquired whether the foster parents themselves could be liable for damage done to any property by a foster child in their care. And in that regard, whether sec. 895.035, Stats., applied to foster parents.
I interpret these questions as asking: 1) whether the county department may be held liable to foster parents or third parties for the torts of a foster child; and 2) whether a foster parent may be held liable for injury to the persons or property of third parties caused by the tort of a foster child. It is my opinion that both questions must be answered affirmatively, subject to the qualifications developed below.
It is a long-established common law principle that the mere relationship of parent and child does not impose upon the parent liability for every tort of the child. 67 C.J.S. Parent And Child
sec. 66. Accord, Hopkins v. Droppers, 184 Wis. 400, 198 N.W. 738
(1924). However, parents are liable for their childrens' torts which result from a failure of the parent to exercise control over their children when they know, or should have known, that the absence of control will result in injury to another. Liability in such circumstances is based on parental negligence rather than the relationship of parent and child. 67 C.J.S.Parent And Child sec. 68.
In Seibert v. Morris, 252 Wis. 460, 32 N.W.2d 239 (1948), our court adopted the Restatement, 2 Torts, formulation of the duty and attendant liability of parents for the conduct of children:
 "`A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control.
"`Comment:
 "`. . . b. The duty of a parent is only to exercise such ability to control his child as he in fact has at the time when he has the opportunity to exercise it and knows the necessity of *Page 166 
so doing. . . .'" Restatement, 2 Torts, sec. 316, pages 858-859, quoted in Seibert, at page 463.
The continued applicability of the Seibert standard was affirmed in Gerlat v. Christianson, 13 Wis.2d 31, 108 N.W.2d 194 (1960).
While the above-cited cases and the rule they adopt deal with torts causing physical injury, I consider the rationale ofSeibert to be equally applicable to situations where a child's tortious conduct results in property damage.
The Children's Code, ch. 48, Stats., delineates the rights and responsibilities associated with child care in terms of guardianship and legal custody. In most instances, a child's natural parents are his guardians. "Guardian" is defined in sec.48.02 (9), Stats., as follows:
 "`Guardian' means guardian of the person and refers to the person having the right to make major decisions affecting a child including the right to consent to marriage, to enlistment in the armed forces, to major surgery and to adoption . . . . The guardian has legal custody of the child unless legal custody is given by the court to another person. . . ."
As is apparent, among the duties of guardianship is the exercise of legal custody. Section 48.02 (10), Stats., defines "legal custody" as for lows:
 "`Legal custody' means the right to the care, custody and control of a child and the duty to provide food, clothing, shelter, ordinary medical care, education and discipline for a child. Legal custody may be taken from a parent only by court action."
I consider the duties Seibert imposes on "parents" to be a function of legal custody. Therefore, when legal custody of a child is transferred by a court from a natural parent or guardian to the county department pursuant to secs. 48.34, 48.345 or48.35, Stats., the recipient agency assumes the responsibility and attendant liability for the conduct of the child.[1] If such children were simply kept in agency institutions our inquiry would end here. Fortunately, *Page 167 
however, they are generally placed in the healthier environment of a foster home. Thus, the question becomes who is liable for the child's conduct once he is placed in a foster home?
Placement does not completely absolve the agency of liability. It retains legal custody,[2] supervises the foster home, and has usually established rules which at least partially prescribe the manner in which the child is cared for. However, because of the nature of the Seibert duties, the greater exposure falls on the foster parent exercising physical custody. The immediate control and supervision of the child is the foster parent's responsibility.
Accordingly, when the foster parents themselves are the aggrieved party, whether the placement agency or the foster parents will bear the loss will depend on which party, if either, was negligent in the performance of its duties. Regarding the claims of third parties, since foster parents are responsible for the immediate control and supervision of children living in their homes, in most cases the foster parents, rather than the placement agencies, would be liable for those torts which could have been avoided by more effective parental supervision. But the placement agency might be liable in those situations in which it could be shown that it had acted negligently in placing a child in a foster home (e.g., placement of a child with known dangerous propensities in a foster home without first fully notifying the foster parents of the child's problem).
With respect to the applicability of sec. 895.035, Stats., to children placed in foster homes, it is my opinion that this provision does not apply to either the foster parents or placement agencies. This statute imposes vicarious liability upon the "parent or parents having legal custody" for property damage or physical injury resulting from the wilful, malicious or wanton acts of minor children. As a statute in derogation of the common law, it must be strictly construed. Neither *Page 168 
foster parents nor placement agencies are "parents" in the strict sense of the term. The Legislature was familiar with the definition of "parent" adopted in sec. 48.02 (11), Stats., of the Children's Code when it enacted ch. 895.
The legislative history of ch. 208, Laws of 1957, the original parental liability statute, supports this construction. Several amendments proposed substitutes for the phrase "the parent or parents having legal custody." The substitutes proposed were: (1) "a parent having legal custody"; (2) "a parent of an unemancipated minor child, or any other person having legal custody of a minor child"; and (3) "any person having legal custody." In view of the alternatives offered, the language enacted clearly indicates legislative intent to limit application of sec. 895.035 to parents, as defined in sec. 48.02 (11), who are exercising legal custody.
BCL:PRS
[1] While we are here discussing transferral of custody to the county department, this statement is equally true if custody is transferred to any of the persons or agencies enumerated in said statutes.
[2] It is unclear from the authorities whether foster parents exercise mere physical custody or delegated legal custody. The revisors of the Children's Code observed that, when a welfare agency placed a child in a foster home, the foster parents were given physical custody of the child, but the agency could remove the child from the home without petitioning the court since the agency retained legal custody. Sec. 48.02 1955 Revision Committee Note, W.S.A., p. 363. But in Goller v. White, 20 Wis.2d 402,122 N.W.2d 193 (1962), the court spoke of placement of a foster child as a "delegation" of legal custody. While I believe the former to be the better view, both characterizations denote immediate care by the foster parents with some retained responsibilities in the placing agency.