John E. BANKERT, a minor, by his guardian ad litem,

Robert L. Habush, Plaintiff-Appellant-Petitioner,

Rosa BANKERT and Ervin Bankert, Plaintiffs,

v.

THRESHERMEN'S MUTUAL INS. Co., and Watertown Mutual Insurance Company, Defendants-Respondents,

The OHIO CASUALTY INS. Co., Richard D. Mueller, Arnold J. Mueller, Margie Mueller, State Farm Mutual Automobile Insurance Co., Steven J. Johnston, Michael Johnston, Karen Johnston, and Mutual Life Insurance Co. of New York, Defendants.

Supreme Court

*No. 80–2053. Argued November 1, 1982.—*
*Decided February 3, 1983.*

(Also reported in 329 N.W.2d 150.)

470

For the plaintiff-petitioner there were briefs by *Howard A. Davis, Patrick O. Dunphy* and *Habush, Habush & Davis, S.C.,* Milwaukee, and oral argument by *Mr. Dunphy.*

For the defendants-respondents there was a brief by *Thomas R. Schrimpf* and *Kluwin, Dunphy, Hankin & McNulty,* Milwaukee, and oral argument by *Mr. Schrimpf.*

HEFFERNAN, J.   This is a review of a decision of the court of appeals which reversed an order of the circuit court dismissing a motion for summary judgment.[1]

The court of appeals held that, where the language of a farmowners policy provided that the coverage did not apply "to the ownership, operation, maintenance or use . . . of (1) automobiles while away from the premises or the ways immediately adjoining" (p. 441), there was no coverage for an accident on a public highway even though the plaintiff alleged that the parents' negligent entrustment of the vehicle or negligent supervision of the minor

---

[1] *Bankert v. Threshermen's Mut. Ins. Co.,* 105 Wis. 2d 438, 313 N.W.2d 854 (Ct. App. 1981), on appeal from an order of the circuit court for Jefferson county dated October 14, 1980, John B. Danforth, Circuit Judge. Although the court of appeals labeled its decision as modification and affirmance of the trial court's decision, it was in fact a reversal.

driver occurred on the farm premises and not at the situs of the accident. We agree with the court of appeals and affirm its decision that the farmowners policy does not afford any coverage where the underlying "occurrence"—the automobile accident—took place away from the premises.

The facts which must be accepted at this stage of the proceedings are set forth in the complaint. On September 22, 1978, Richard D. Mueller, aged fifteen, was driving an unlicensed motorcycle, without functioning lights, when it crashed into a car illegally parked on the streets of Watertown. His passenger, John E. Bankert, also a fifteen-year-old, was injured.

The plaintiffs, John Bankert and his parents, sued Richard Mueller and his parents, Arnold Mueller and Margie Mueller. Plaintiffs claim that both Mueller parents are liable because they "negligently entrusted" the motorcycle to Richard and because they "negligently supervised" him on the night of the accident.

The plaintiffs claim that Threshermen's Mutual Insurance Company[2] (hereinafter Threshermen's or the company) was liable under a farmowners policy issued to the Muellers. Threshermen's has responded by asserting that, under its policy, no coverage is afforded even if the accident occurred exactly as alleged by the plaintiffs and even if the parents were negligent in the respects alleged.

Threshermen's moved for summary judgment, asking that it be dismissed because its policy did not afford coverage. In an order entered by the trial court, the motion of the company was denied. The trial court found that, although no coverage was afforded on the cause of action

[2] The actual farmowners' insurer is Watertown Mutual, but it is 100 percent reinsured by Threshermen's. The same principles apply to both. For convenience and for the sake of consistency with the nomenclature of the court of appeals' decision, we will refer only to Threshermen's Mutual Insurance Company.

for negligent entrustment, coverage was afforded on the cause of action for negligent supervision.

The Bankerts appealed from the portion of the trial court order holding there was no coverage for the negligent-entrustment action and the company cross-appealed from the portion of the order holding that coverage was afforded on the alleged negligence in respect to supervision.

The court of appeals concluded that the farmowners policy afforded no coverage under either alleged cause of action. The effect of its decision was to grant summary judgment dismissing Threshermen's and to reverse the trial court order. It improperly denominated its decision as one which "modified and, as modified, affirmed." We affirm the court of appeals decision reversing the order of the trial court.

We are not in this opinion concerned with the merits of plaintiffs' claim on either theory. We treat only the question of coverage under Threshermen's farmowners policy. For the purpose of determining the coverage question, we assume, although we do not decide, that the facts are sufficient to state a claim under both theories: Negligent entrustment of the motorcycle to Richard and failure to exercise proper control over Richard shortly before the accident. We conclude that in neither instance, although liability be found against Richard's parents, does the Threshermen's policy afford coverage.

In order to reach that conclusion, we must first consider the nature of the claim for "negligent entrustment" and the claim of "negligent parental control."

The common law does not make parents routinely liable for damages caused by their children. Prosser, *Law of Torts* (4th ed. 1971), sec. 123; 59 Am. Jur. 2d, *Parent and Child* (1971), sec. 130. However, in some circumstances parents would be held liable. Four general situa-

tions resulting in parental liability have been recognized at common law: (1) Where the parent negligently entrusts the child with an instrumentality which may become a source of danger to others; (2) where the child is acting as the parent's agent; (3) where the parent knows of the child's wrongdoing and consents to it, or directs or sanctions it; and (4) where the parent fails to exercise control over the child, although the parent knows, or should know, that injury to another is a probable consequence. *See,* Comment, *Parental Liability for a Child's Tortious Acts,* 81 Dickinson Law Rev. 755, 759 n. 25 (1977). The commentators indicate that parental liability is based on ordinary rules of negligence, not the parent-child relationship.

Only two of these common-law types of possible liability are relevant here—negligence entrustment and negligent failure to exercise control.

*Hopkins v. Droppers,* 184 Wis. 400, 198 N.W. 738 (1924), and 191 Wis. 334, 210 N.W. 684 (1926), appears to be the first Wisconsin negligent-entrustment case. *Hopkins* involved a fifteen-year-old child for whom his father purchased a motorcycle. On the first appeal of that case to the Wisconsin Supreme Court, it was assumed that, under the pleadings, young Droppers had used the motorcycle with the express consent and approval of his father.

This court recognized the general rule that no liability arises at common law by virtue of the parental relationship alone. It pointed out that some participation by the parent in respect to a tort of a minor child was an essential predicate for parental liability. It held, however—applying the general rule that an owner may be liable for his own negligence in entrusting an instrumentality to a person that he knows will be incompetent or incapable of managing it—that a parent could be liable for negligently entrusting an automobile or motor-

cycle to a minor child. Accordingly, this court affirmed the trial court's order holding that a cause of action for negligent entrustment had been stated.

At the trial following remand, the jury found that the father had failed to exercise ordinary care to prevent his son from operating the motorcycle. That verdict was reversed by this court, because there was no evidence to show that the child was habitually disobedient of his parents and that the father had twice just prior to the use resulting in an accident told the child not to operate the cycle unless accompanied by an adult. After reviewing the evidence relied upon to support the jury verdict and finding it insufficient, the court ruled as a matter of law that the father did not violate his duty to supervise his son and, accordingly, did not commit any act of negligence.

It is noteworthy that what in the first *Hopkins v. Droppers* case was referred to as "negligent entrustment" in the second case resolved itself into a problem of whether the parent was negligent in the "supervision" or control of a minor child. The two cases are instructive of the fact that the theories merge almost imperceptibly, depending on a court's interpretation of the facts. Hence, the *Hopkins v. Droppers* duo exemplifies this court's acceptance of both negligent entrustment and negligent control in finding a parent a joint tortfeasor when the parent's act is in conjunction with a negligent act by a minor.[3]

It is apparent, then, that in Wisconsin parental liability, at common law, never arises from the familial relationship alone; but in respect to the problem pertinent to this case, liability can arise when any person

[3] *See, McGee v. Hahn*, 192 Wis. 121, 212 N.W. 66 (1927); *Kempf v. Boehrig*, 95 Wis. 435, 290 N.W.2d 562 (Ct. App. 1980), for recent discussions of *Hopkins v. Droppers*.

(whether parent or not) who has a vehicle under his control permits another to use the vehicle if he knows, or should know, that the other is unable to manage the vehicle and, therefore, injury to others is likely to result.

Restatement (Second), *Torts* 2d, sec. 308, p. 100 (1965), states the rule in general terms:

"Sec. 308. **Permitting Improper Persons to Use Things or Engage in Activities**
"It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."

Analysis of Wisconsin authority and the rule of the Restatement illustrates that the negligence of the entruster is a separate act of negligence. It is also apparent, however, that such negligent entrustment is irrelevant unless the person to whom a thing is entrusted acts in a negligent manner (creates an unreasonable risk) and in fact inflicts injury as the result of such conduct. For liability to ensue, the negligence of the entruster and the entrustee must result in the injury.

This was the express position taken by this court in the first *Hopkins* case when it quoted with approval Berry on *Automobiles* (3rd ed.), sec. 1040, p. 410:

" 'In such a case of mere permissive use, the liability of the owner would rest . . . upon the combined negligence of the owner and the driver; negligence of the owner in intrusting the machine to an incompetent driver, and of the driver in its operation.' "

Hence, it is the negligent use and operation of the vehicle by the entrustee which makes the negligent entrustment relevant at all. Negligent entrustment is part

of the tort of negligent use and operation of the entrusted automobile.

The second theory upon which plaintiffs rely is one they denominate as "negligent supervision." This term has never been used by this court; and, consistent with our adoption of Restatement, *Torts* 2d, sec. 316 in *Seibert v. Morris,* 252 Wis. 460, 32 N.W.2d 239 (1948), we conclude the tort is more appropriately referred to as one of "failure to control."

In *Seibert,* p. 463, we adopted sec. 316:

"Sec. 316. **Duty of Parent to Control Conduct of Child**

"A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

"(a) knows or has reason to know that he has the ability to control his child, and

"(b) knows or should know of the necessity and opportunity for exercising such control."

The tort of negligent control has been considered by this court in *Seibert, supra; Pawlak v. Mayer,* 266 Wis. 55, 62 N.W.2d 572 (1954) ; and *Gerlat v. Christianson,* 13 Wis. 2d 31, 108 N.W.2d 194 (1961). In these cases, as in the negligent-entrustment cases, the parent who has failed to exercise proper control is treated as a joint tortfeasor, whose separate act of negligence, for the imposition of liability, only becomes relevant upon the negligent act and injury by the child, who should have been subject to proper control.

The tort differs from that of negligent entrustment, however. Although both the tort of negligent entrustment and of failure to control a child generally involve children improperly using an instrumentality which can

be dangerous, entrustment requires that the instrumentality be "entrusted" to the entrustee. Negligent control may be the failure to exercise ordinary care in allowing the instrumentality to be in the hands of a child, or it may be a failure in other respects, *e.g.*, failure to properly instruct in use or a failure to warn of hazards.

In either negligent entrustment or negligence in respect to proper control of a child, a parent's (or entruster's) negligence is a separate act of negligence, but that negligence is nonactionable in the absence of a wrongful or negligent act of the child or entrustee. It is the act of the child or entrustee which is the cause in fact of the injury or "occurrence."[4]

The Wisconsin cases illustrate that the two theories alleged by the plaintiffs herein are devices for making one other than the person who actually inflicted the harm responsible for at least a part of the damages. There can, however, be no liability or responsibility in the absence of the underlying tort—in the instant case, the negligent operation of the motorcycle by Richard Mueller and the injury of the plaintiff-passenger, John Bankert.

The insurance policy issued by Threshermen's does not insure against theories of liability. It insures against "occurrences" which cause injuries.

Coverage A of the insuring agreement provides:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an *occurrence* . . . ." (Emphasis supplied.)

An "occurrence" is defined in the policy as:

---

[4] We omit any discussion of statutory liability of parents; *e.g.*, sec. 343.15(2), Stats., refers only to children who are, by nature of their parents' sponsorship, licensed to drive motor vehicles. Here, Richard Mueller was not licensed.

"[A]n accident, including injurious exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Because the Muellers are named insureds under the policy, in the absence of exclusions they would be covered for the damages incurred by the accidental injury to the Bankert boy. The policy provides, however:

"This policy does not apply . . . .
"(b) under any of the coverages, to the ownership, operation, maintenance or use, including loading and unloading of
"(1) automobiles while away from the premises or the ways immediately adjoining."

It is undisputed that the motorcycle is an "automobile" for the purpose of the exclusion.

The plaintiffs agree that the negligent act of Richard, who was driving the car, is excluded from coverage, but argue that, in respect to the negligence of Richard Mueller's parents, this exclusion is inapplicable, because their negligence did not take place "away from the premises," but rather that the negligent entrustment or the negligent failure to control took place on the farm premises.

According to the plaintiffs, it is not the place of the accident that controls, but rather the place of the negligent act. It is immediately apparent that this contention, if approved, would result in a strange and strained construction of the policy in numerous circumstances, *e.g.*, in the case of negligently maintained tires which cause an accident or where brakes have been neglected. These acts of negligence could hardly have occurred at the situs of the accident. In part, the negligence would have occurred where the vehicle was garaged—the farm premises. Under this argument, irrespective of where the accident occurred, all negligence which was attributable to conduct at the farm home would be covered. Accep-

tance of this theory would convert the farmowners liability policy into an automobile policy.

However, we need not speculate as to what was intended by the company when it issued the policy or by the insured when he acquired it. As pointed out above, the company becomes legally liable to pay only when the insured incurs liability for personal injury or property damage caused by an "occurrence." An occurrence is defined as an accident. This is what is insured against—not theories of liability. Accordingly, when the event insured against involves an automobile and happens away from the premises, the exclusion applies. There is no coverage.

The trial court and the court of appeals both indulged in what we consider to be superfluous rationales in order to conclude that the negligent acts alleged to be committed by Richard's parents were excluded in respect to "ownership, operation, maintenance or use, including loading and unloading" of the automobile. The court of appeals concluded that both alleged causes or theories of action were directly related to "ownership," "operation," "maintenance," and "use." While we cannot quarrel with this analysis, because it seems clearly correct, it also seems redundant. It would appear that the exclusions appear to run the entire gamut of possible coverage. Hence, a reasonable, plain reading of the exclusions leads to the conclusion that all automobile coverages are excluded when the occurrence, or the event insured against, happens away from the premises.

The court of appeals correctly reasoned that entrusting the motorcycle to Richard was either an exercise of "ownership" or of "use." We also agree with the court of appeals' analysis in respect to "negligent supervision" or, alternatively stated, "failure to control." This conduct by Richard's parents relates directly to the manner of operation of the vehicle, *i.e.*, its negligent use. There appears to be no reasonable doubt that the two areas or

theories of liability on which the plaintiffs rely are intimately connected with the very types of coverages which are expressly excluded.

While we do not accept the proposition that whatever is covered in the standard automobile liability policy is *ipso facto* excluded from the farmowners policy by the provisions incorporated in the Muellers' policy, it is difficult to envision liability coverage greater than that excluded by sec. II. We think that the effect of the exclusion is to unambiguously exclude all coverage for liability for an automobile accident when the occurrence—the event insured against—takes place away from the premises.

It is "occurrences" that are insured against, not negligent acts. Here the occurrence was unequivocally "away from the premises."

The Connecticut Supreme Court in *LaBonte v. Federal Mutual Ins. Co.*, 159 Conn. 252, 268 A.2d 663 (1970), construed a homeowners policy with exclusion language almost identical to that in the instant case. It reached the heart of the issue by holding that the language "away from the premises" was plain and unambiguous. It said that the obvious purpose was to limit the territorial scope of coverage to the premises of the home.

"That clause provides, in effect, that any liability, under any theory of recovery, whether personal negligence, master-servant, agency, or other theory of vicarious liability, which arises from an automobile accident off the premises, is outside the scope of the contract." P. 257.

It quoted with approval *Service Welding & Machine Co. v. Michigan Mutual Liability Co.*, 311 Fed. 2d 612, 618 (6th Cir.), in respect to a similar policy:

"[A]t least as to automobiles, the creation of liability and the . . . injury . . . must all occur on the premises of . . . [the insured]." P. 257.

In *Barnstable County Mut. Fire Ins. Co. v. Lally,* 374 Mass. 602, 373 N.E.2d 966 (1978), the Supreme Judicial Court of Massachusetts held, where a homeowners policy excluded coverage in the event of bodily injury arising out of the ownership, operation, or use of a vehicle if the injury occurs away from the residence premises, an action brought on the theory of negligent entrustment did not circumvent the exclusion, that negligent entrustment is derived from the general concepts of ownership, operation, and use of the vehicle. Moreover, it held that the meaning of the exclusion was plain—it excluded coverage for bodily injuries from automobile accidents happening away from the premises; and, hence, the exclusion applied although there was a negligent entrustment.

The Washington Court of Appeals, in interpreting a similar exclusion, said:

"It is the place where the accident occurs, and not the place where the negligent commission or omission occurs, which controls the insurer's liability under such exclusionary language . . . ." *St. Paul Fire and Marine Ins. Co. v. Circle Bar J Boys' Ranch, Inc.,* 1 Wash. App. 377, 379–80, 461 P.2d 567 (1969).

*See* also, *Fidelity & Guaranty Ins. Underwriters, Inc. v. McManus,* 633 S.W.2d 787 (Tex. 1982), and *Cooter v. State Farm Fire and Casualty Co.,* 344 So. 2d 496 (Ala. 1977), both of which emphasized that, for liability, there must be negligent use by the person to whom the vehicle is entrusted. Hence, the exclusion is applicable by virtue of the use of the vehicle away from the premises. The same reasoning applies to a situation where the vehicle is in the hands of a child where there is a negligent failure of control.

As the Alabama court said in *Cooter, supra,* p. 499:

"It is the concurrence of these dual elements—negligent entrustment by the owner or custodian of the instrumentality plus its negligent use . . . that is missing in the rationale of those cases upholding coverage."

Plaintiffs place substantial reliance on *Lawver v. Boling,* 71 Wis. 2d 408, 238 N.W.2d 514 (1976). The plaintiffs assert that, where injuries are proximately caused by an insured risk and an excluded risk, the insurer is liable. We need not quarrel with that assertion in the instant case, for its application herein begs the question. The assumption of the plaintiffs is that negligence as to entrustment and negligence as to control are risks that are insured. In the instant case, it is clear that it is only the "occurrence"—the accident—that is insured against and, if the use of the automobile is away from the premises and the accident occurs there, there is no conduct that is insured. All coverage is excluded.

Moreover, *Lawver* relied upon *State Farm Mut. Automobile Ins. Co. v. Partridge,* 10 Cal. 3d 94, 109 Cal. Rptr. 811, 514 P.2d 123 (1973). In that case, the insured was hunting rabbits from his vehicle while driving and holding a gun. He turned off the road and hit a bump, causing the gun to discharge, wounding his passenger. The trial court found the defendant negligent in modifying his gun to give it a "hair trigger action" and in driving his vehicle off the paved road onto rough terrain. 10 Cal. 3d at 99. The Supreme Court of California emphasized that one of the negligent acts was auto-related and the other was non-auto-related. It concluded that an exclusion in a homeowners policy for injuries arising out of the use of a motor vehicle "does not preclude coverage when an accident results from the concurrence of a non-auto-related cause and an auto-related cause . . . ." 10 Cal. 3d at 97. The court acknowledged that a homeowners policy does not generally afford coverage for ordinary automobile accidents arising solely out of the use of an automobile.

The *Partridge* analysis does not result in coverage in this case. There is no "non-auto-related" cause here. The parents' alleged entrustment of the motorcycle to their son or failure to control his use of the motorcycle

was motor-vehicle related. If they are liable, it is not for a general failure to supervise the son, but for a failure to control his behavior in a specific respect—driving the motorcycle. In *Partridge,* the modification of the gun could have resulted in an accident which would render the defendant liable without the involvement of an automobile. 10 Cal. 3d at 103. Here, the parents' acts could not render them liable without their son's operation of the vehicle. Therefore, there is no coverage under the homeowners policy.

The *Lawver* rationale, where there was a dispute as to the cause of the accident, auto-related versus non-auto-related, is not germane to the issue here. In the instant case, the parents of Richard Mueller could not be liable under any circumstance unless Richard used the vehicle. In addition, they owned it, and it was this evidence of ownership that made it possible to entrust the motorcycle to Richard. Most important, however, is the plain language of the exclusion, which demonstrates that all conceivable coverage is excluded when there is an automobile accident or occurrence resulting in bodily injury or property damage away from the premises.

*By the Court.*—Decision affirmed.