Judy L. NIEUWENDORP, Plaintiff-Respondent,†

v.

AMERICAN FAMILY INSURANCE COMPANY, Defendant-
Appellant,

EMPLOYERS INSURANCE OF WAUSAU, a mutual company,
Nominal-Defendant-Respondent.

Court of Appeals

No. 93–0515. *Oral argument December 7, 1993.—Decided
December 21, 1993.*

(Also reported in 510 N.W.2d 779.)

†Petition to review filed.

259

On behalf of defendant-appellant, the cause was submitted on the briefs of *Michael L. Eckert* and *James O. Moermond* of *Eckert & Stingl Law Office* of Rhinelander and orally argued by *James O. Moermond.*

On behalf of plaintiff-respondent, the cause was submitted on the brief of and orally argued by *D. J. Weis* of *Johnson, Weis, Paulson & Priebe, S.C.,* of Rhinelander.

An amicus brief on behalf of the Wisconsin Education Association was submitted on the brief of *Mary E. Pitassi* and *Bruce Meredith* and orally argued by *Bruce Meredith.*

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. American Family Insurance Company appeals a judgment finding its insureds, Roberta and James Hein, liable for failing to control their son, Jason. On appeal, American Family argues that the plaintiff, Judy Nieuwendorp, failed to establish a negligence claim against its insureds and that public policy also precludes liability. We conclude that the jury's finding that the parents' actions regarding Jason were a substantial factor in causing the injury to Nieuwendorp was based on speculation and was not supported by any credible evidence. We therefore reverse.

Jason Hein began experiencing difficulty with his attention span during the first grade. As a result of these problems, an Individualized Education Program was prepared for Jason pursuant to state and federal laws regarding the education of handicapped children. In the summer of 1988, Jason's parents took him to the Marshfield Clinic after being referred by the school district psychologist. The parents had been told by Jason's teachers that Jason was acting up in school and that he "would kick, spit, bite and yell violently at other students and at teachers." The parents reported this behavior to Dr. Philip Zerfas, the psychologist at the Marshfield Clinic.

Zerfas diagnosed Jason as having attention deficit hyperactivity disorder with disorders of conduct and prescribed Dexedrine. Dexedrine is a stimulant that reduces impulsive and aggressive behavior in hyperactive children. Two weeks after starting Jason on Dexedrine, the Heins told Zerfas that Jason's behavior had improved. The Heins testified that they kept Jason on the medication through the fall of the school year, but that they took him off the drug around January of 1989 because Jason complained of side effects. Some teachers and aides believed Jason was taking the drug throughout the 1988-89 school year.

When the Heins withdrew Jason's medication, they did not consult Zerfas or any other physician about the drug's side effects or about the appropriateness of discontinuing treatment. They also did not discuss their decision with anyone at Jason's school or in the school district. The Heins also never warned anyone at Jason's school that as a result of their decision, Jason's impulsive and sometimes aggressive behavior might return.

In the fall of 1989, Jason began the fourth grade. Although his primary placement remained in the special education classroom, he spent about one-half of his school day attending regular classes. This program decision is known as "mainstreaming." Mainstreaming a special education student is a decision made by the teacher and parents based on a student's progress in his ability to handle regular education classes.

Jason's regular fourth grade teacher, Elizabeth Jacobson, did not know whether Jason was taking medication. However, she often had difficulty with him. Jason would throw eraser bits, make noises or just withdraw in her classroom. When Jason behaved inappropriately, Jacobson would send for one of his special education teachers, either Nieuwendorp or Vicky Sherry. There were a number of occasions when the special education teachers had to remove Jason from Jacobson's classroom because of his disruptive behavior.

Nieuwendorp and Sherry also had difficulty with Jason. Both witnessed Jason's use of vulgar language, spitting, throwing things, and being physically aggressive toward other children. Both believed Jason was supposed to be on medication. Sherry testified that they would occasionally ask Jason whether he had taken his medication, and Jason sometimes responded that he did not remember taking it and sometimes responded that he had not taken it.

On October 6, 1989, Nieuwendorp and Sherry were called to Jacobson's classroom to deal with Jason's behavior. Nieuwendorp entered the classroom and attempted to get Jason to cooperate. When it became apparent he would not cooperate, she removed him from the classroom to the hallway. When Jason refused to walk to the "time-out" room, they began to physically

escort him down the hallway toward the steps. Jason periodically indicated he would cooperate only to begin resisting again moments later. At the top of the stairs, Jason pulled Nieuwendorp by the hair with such force she fell to the floor. There is some dispute as to whether Jason intended to hurt her or was attempting to prevent his own fall down the staircase. In any event, Nieuwendorp suffered a herniated disc in her neck as a result of Jason's actions. She eventually withdrew from teaching, collected worker's compensation and underwent surgery to repair her injured neck.

Nieuwendorp sued American Family for the negligence of its insureds, the Heins. Her cause of action was based on Jason's negligence in injuring her and on the Heins' negligence in failing to control Jason's behavior. At the close of evidence, American Family moved for a directed verdict on numerous grounds, including that Nieuwendorp failed to demonstrate how her conduct or the school's procedure would have been different had there been notice from the Heins that Jason was no longer on medication. The court denied the motion. The jury returned a verdict finding Jason 14% causally negligent, Jason's parents 55% causally negligent and Nieuwendorp 31% causally negligent. American Family filed motions after verdict on numerous grounds, effectively attempting to preclude liability for its insured's actions. This motion was also denied. Additional facts are set forth hereafter.

American Family appeals the portion of the judgment finding the Heins causally negligent for Nieuwendorp's injuries. It argues that Nieuwendorp failed to establish a negligence claim against the Heins and that public policy precludes such a claim. Specifically, although the Heins acknowledge the existence of a parental duty to control a child, they argue that such

a duty does not require them to medicate their child against their will. They therefore conclude that they could not have been negligent in failing to medicate Jason. They further conclude that permitting liability for failure to medicate would violate public policy by forcing parents to give up privacy and liberty rights.

Nieuwendorp concedes that parents do not have to medicate a child against their will, but she argues that the Heins were negligent in exercising their right not to medicate. She claims that the Heins' duty to control Jason required them to either consult a doctor before withdrawing the medication or to warn the school that Jason was no longer on medication. She argues that they breached their duty to control Jason and caused her injuries by failing to take these precautions.

We begin by addressing whether Nieuwendorp established a negligence claim against the Heins. On appeal, our review is extremely limited. A jury verdict will not be upset on appeal if the record contains any credible evidence that under any reasonable view supports the verdict. *D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 320, 475 N.W.2d 587, 592 (Ct. App. 1991). A negligence claim has four elements: "(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage. . . ." *Coffey v. Milwaukee*, 74 Wis. 2d 526, 531, 247 N.W.2d 132, 135 (1976). Thus, as long as there is credible evidence to reasonably support a jury's finding each element of a negligence claim, we will not upset the verdict for lack of proof. We note, however, that a jury may not base its findings on conjecture and speculation. *Herbst v. Wuennenberg*, 83 Wis. 2d 768, 774, 266 N.W.2d 391, 394 (1978).

Although the common-law does not make parents strictly liable for damages caused by their children, Wisconsin recognizes a parental duty to control a child and imposes liability for breach of that duty. *Bankert v. Threshermen's Mut. Ins. Co.*, 110 Wis. 2d 469, 473-74, 329 N.W.2d 150, 152 (1983). This duty was recognized in *Seibert v. Morris*, 252 Wis. 460, 463, 32 N.W.2d 239, 240 (1948), where the court adopted Restatement (Second) of Torts § 316, which states:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
> (a) *knows or has reason to know that he has the ability to control his child, and*
> (b) *knows or should know of the necessity and opportunity for exercising such control.* (Emphasis added.)

Even assuming credible evidence existed to support a finding of a duty to control and breach of that duty, we do not believe credible evidence reasonably supports a finding that the Heins' failure to consult a physician or to warn Jason's school caused Nieuwendorp's injuries.[1] Causation is established if a defendant's negligence was a substantial factor in pro-

---

[1] Credible evidence to support a finding that the Heins had a duty to control Jason's conduct would include their knowledge that his behavior could be controlled with Dexedrine; their opportunity to exercise control over him between January and October of 1989 and Roberta Hein's tacit admission of a need to exercise control. On cross-examination, Hein was asked:

ducing plaintiff's injury. *Young v. Professionals Ins. Co.*, 154 Wis. 2d 742, 747, 454 N.W.2d 24, 27 (Ct. App. 1990). There may be more than one substantial factor contributing to an injury. *Id.* at 748, 454 N.W.2d at 27. However, "[a] mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 460, 267 N.W.2d 652, 655 (1978) (quoting WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 41, at 241 (4th ed. 1971)).

We conclude that the jury could only speculate whether Jason's further consultation with a physician

---

Q: Do you think that you have any obligation, Mrs. Hein, when you have a student—have a child like Jason who has had the kind of problems that he has to exercise some control over Jason so that he won't create problems and potentially endanger other students and teachers at the school? Do you feel that you have some responsibilities in that regard?

A: Yes. But I didn't feel drugging him was the answer.

Arguably there is also credible evidence to support a finding that the Heins breached this duty. Nieuwendorp argues reasonable care required the Heins to consult a doctor or warn Jason's school prior to withdrawing medication. Other jurisdictions have held ordinary care requires parents to warn those who may be at risk of injury from their children. *See Ellis v. D'Angelo*, 253 P.2d 675, 679 (Cal. 1953). We can readily imagine situations where parents, in the exercise of ordinary care should consult a doctor or warn others in an effort to reduce the risk of injury from a child. The uncontradicted evidence here is that the Heins neither consulted a doctor nor warned the school prior to taking Jason off Dexedrine.

or warning to the school of the discontinuance of medication would have prevented Nieuwendorp's injury.[2]

Similarly, nothing suggests that warning the school that Jason was not on Dexedrine would have prevented the incident. Warning others of a child's dangerous propensities is only useful to those unfamiliar with the child's propensities. By October 6, Nieuwendorp was quite familiar with Jason's behavior and had removed him from Jacobson's classroom on numerous occasions. Her prior experiences with Jason and the difficulty she was encountering with him on October 6 gave her all the notice she needed that his behavior might be dangerous. There is no credible evidence upon which to find a parental warning to the school would have prevented the accident.

Nieuwendorp suggests that if the school knew Jason was not on Dexedrine, he would not have been mainstreamed but would have received a different placement. She concludes that Jason would not have been present to act up in Jacobson's class on October 6 and that she would not have had to remove him that

---

[2] It is conjecture that had Jason been on Dexedrine on October 6, Nieuwendorp would not have been called to the classroom that day. Dr. Gina Koeppl testified that Dexedrine probably would have reduced the *types* of inappropriate behavior Jason exhibited on October 6 and reduced the *potential* for Nieuwendorp's intervention. However, neither Koeppl nor Zerfas would testify as to the probability that Dexedrine would have prevented Jason's behavior. Zerfas suggested it was impossible to state with any probability that Jason would not have misbehaved on October 6 because such an incident might occur even when on Dexedrine. Nothing in the record suggests that even if the Heins consulted Zerfas or some other physician about Jason's side effects, they would have kept him on the medication. It is just as possible the Heins would have withdrawn the Dexedrine.

day. No evidence in the record supports this contention, and the conclusion is pure speculation.

Jason's individual education plan did not require, or even mention, Jason's use of medication. One of the plan's goals was for Jason to begin, attend and participate regularly in part-time mainstream classes with support from special education staff. As of April 1989, the plan reports Jason had mastered this objective. This was after he had been taken off Dexedrine. Thus, it was because of his achievements in the 1988-89 school year that he was mainstreamed in the 1989-90 school year. This is supported by his fourth grade teacher's testimony that the decision to mainstream is based on a student's progress. It is mere speculation that if the school had learned Jason was not taking Dexedrine, it would have ignored his objectively measured progress toward the mainstreaming goal and refused to mainstream him.

We are not unmindful of the daily challenges and, increasingly, the dangers our teachers face in educating our children. Our teachers have a right to expect parents to reduce the risk their children pose to teachers and students. We do not suggest that parents never have a duty to medicate a child they send to school. Nor do we suggest that the failure to warn a school that a child is dangerous can never be the cause of an actionable injury to a third person. We merely conclude that no credible evidence here could reasonably support the conclusion that the Heins' failure to consult a physician or to warn Jason's school caused Nieuwendorp's injuries. We therefore do not need to reach American Family's public policy arguments.

*By the Court.*—Judgment reversed.