Judy L. NIEUWENDORP, Plaintiff-Respondent-Petitioner,

v.

AMERICAN FAMILY INSURANCE COMPANY, Defendant-Appellant,

EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, Nominal-Defendant-Respondent.

Supreme Court

No. 93–0515. *Oral argument November 10, 1994.—Decided April 5, 1995.*

(Also reported in 529 N.W.2d 594.)

For the plaintiff-respondent-petitioner there were briefs by *D. J. Weis* and *Habush, Habush, Davis & Rottier, S.C.,* Rhinelander and oral argument by *D. J. Weis.*

For the defendant-appellant there was a brief by *Michael L. Eckert, James O. Moermond, III* and *Eckert & Stingl Law Office,* Rhinelander and oral argument by *James O. Moermond, III.*

Amicus curiae brief was filed by *Bruce Meredith, Mary E. Pitassi,* Madison, for the Wisconsin Education Association Council.

JANINE P. GESKE, J.   This is a review of a published decision of the court of appeals, *Nieuwendorp v. American Family Ins. Co.,* 181 Wis. 2d 259, 510 N.W.2d 779 (Ct. App. 1993), which reversed the judgment of the circuit court for Oneida County, Robert E. Kinney, Circuit Judge. The judgment of the circuit court, entered on a jury's verdict, awarded plaintiff Judy L. Nieuwendorp (Nieuwendorp), a special education

teacher, damages as a result of an incident in which a fourth-grade student, Jason Hein (Jason), grabbed Nieuwendorp's hair and pulled it, resulting in an injury to her neck. During the course of a five-day trial, Nieuwendorp claimed that Jason and his parents (the Heins)[1] were negligent because: (a) Jason failed to control his behavior; (b) the Heins failed to exercise reasonable care with respect to their son; and (c) the Heins failed to control their son.

The jury determined that the Heins' conduct regarding Jason was a substantial factor in causing Nieuwendorp's injuries and apportioned liability in the following manner: Jason 14% negligent; the Heins 55% negligent; and Nieuwendorp 31% negligent. During motions after verdict, the Heins' insurer, American Family, asked the circuit court to change the jury's answers regarding cause on the grounds of insufficient evidence. The court denied the motions and found that the jury's verdict was supported by credible evidence.

On appeal, American Family argued that Nieuwendorp failed to establish the elements of a negligence claim against the Heins. American Family further argued that public policy precluded liability. The court of appeals addressed only the cause issue and concluded that "the jury's finding that the [Heins'] actions regarding Jason were a substantial factor in causing the injury to Nieuwendorp was based on speculation and was not supported by any credible evidence." *Nieuwendorp,* 181 Wis. 2d at 261.

Three issues are before this court:

(1)   Whether Nieuwendorp failed to establish the Heins' negligence by credible evidence;

---

[1] At the time of the trial, the Heins' insurer, American Family Insurance Company, was the only defendant.

(2)  whether Nieuwendorp failed to establish causation by credible evidence; and

(3)  whether public policy precludes liability in this case.

We hold that the jury's verdict on negligence and causation was predicated upon credible evidence and was not contrary to public policy. Typically, this court does not accept for review cases which turn on the sufficiency of the evidence presented at trial. However, we can grant a petition to review a case when our decision will help develop, clarify or harmonize the law and the question presented is a novel one, the resolution of which will have statewide impact. Section (Rule) 809.62(1)(c)2, Stats. We believe this is just such a case.

Across this state, increasing numbers of students have been identified as exhibiting emotional or behavioral problems which significantly interfere with their academic progress. Some of those students engage in disruptive or violent conduct. As a result, teachers, administrators and staff now face problems and dangers in the classroom unheard of a generation ago. This court has previously recognized a parent's responsibility to exercise reasonable care to control his or her child in order to prevent harm to others. *See Bankert v. Threshermen's Mut. Ins. Co.,* 110 Wis. 2d 469, 477, 329 N.W.2d 150 (1983). However, we have never reviewed that legal obligation in the context of the school setting. A decision by this court will, therefore, help develop the law on that issue.

The facts are as follows. Jason is a child who was diagnosed in June 1988 as suffering from attention deficit hyperactivity disorder (ADHD). Aspects of this condition began manifesting themselves when Jason was in the first grade. Specifically, Jason was unable to perform well academically and would engage in a vari-

ety of disruptive behaviors, including kicking, biting, using vulgar language, fidgeting, and making inappropriate noises.

At the time Jason was diagnosed as suffering from ADHD, doctors at the Marshfield Clinic prescribed a medication known as Dexedrine for use during the school year and optionally on weekends and during the summer. The medication works to stimulate that portion of the brain which enables concentration and vigilance. *See* Robert J. Campbell, M.D., *Psychiatric Dictionary* 71–72 (6th ed. 1989). It has also been suggested that Dexedrine reduces impulsive and disruptive behavior. *Id.* Jason was placed on the medication for a two-week trial period, after which time the Heins reported to the Marshfield Clinic psychologist, Dr. Zerfas, that Jason's behavior had improved. In October 1988, the Heins confirmed their earlier report and stated that while on Dexedrine Jason was better able to concentrate and did not suffer from any significant side effects.

Though the record indicates that the Heins renewed the prescription for Dexedrine between June 1988 and April 1989, there is also evidence to indicate that the Heins did not return to the Marshfield Clinic for scheduled follow-up visits after October 1988 and that they chose not to give Jason the Dexedrine after April 1989. After the Heins discontinued the medication, they did not consult with Dr. Zerfas or any physician or inform themselves about the consequences of discontinuing Dexedrine and alternatives to that form of treatment. Further, it is not clear who initially informed Jason's teachers and aides about the medication; however, the Heins did not subsequently tell anyone at the school that the medication had been discontinued and that Jason's disruptive behavior

might return. In fact, some of the teachers and aides, including Nieuwendorp, believed that Jason was receiving the Dexedrine throughout the 1988–89 school year.

In the fall of 1989, Jason entered the fourth grade. Because of the ADHD diagnosis and his academic performance during the second semester of third grade, Jason was scheduled to spend half the day in a regular fourth-grade classroom and the other half of the day in a special education classroom. Elizabeth Jacobson was Jason's "mainstream" classroom teacher, while Nieuwendorp and Vicky Sherry worked with Jason as his special education teacher and aide, respectively. All three stated that they had problems with Jason during the first part of the 1989–90 school year. For example, Jason would throw eraser bits, use vulgar language, be physically aggressive with other children, or withdraw completely. This conduct necessitated Jason's removal from Jacobson's classroom by Nieuwendorp and Sherry on a number of occasions.

On October 6, 1989, Nieuwendorp and Sherry again were called to Jacobson's classroom in order to deal with Jason's disruptive behavior. When they arrived, Jacobson was standing next to Jason with her hands on his shoulders, and Jason was sitting in his chair, pouting and refusing to do his class work. It soon became apparent that Jason would not cooperate and voluntarily leave in order to go back to his special education classroom. Nieuwendorp removed Jason from the classroom by sliding his chair out into the hallway. Jason was told that he needed to go to the "time out" room, and when he again refused to voluntarily get up from his chair, Nieuwendorp and Sherry physically escorted him downstairs, where the "time out" room and special education classroom were located. Along

the way, Jason alternately cooperated and kicked and thrashed in order to get away. As the three reached the top of the stairs, Jason refused to walk down the stairs, pulled one of his arms free from a hold Sherry had on him, and grabbed Nieuwendorp's hair with such force that she fell to the floor.

There is some dispute as to whether Jason's actions were intended to injure Nieuwendorp or to prevent himself from falling down the stairs. A consequence of the conduct, however, was that Nieuwendorp suffered a herniated disc in her neck, requiring surgery and a curtailment of almost all of her activities outside work. The record also reveals that after this incident, the Heins medicated Jason again for a short period of time. However, by the beginning of fifth grade, Jason was no longer taking Dexedrine.

Nieuwendorp sued American Family for the negligence of its insureds, the Heins. Specifically, Nieuwendorp claimed that Jason was negligent in failing to control his behavior and that the Heins were negligent both in failing to exercise reasonable care and in not exercising control over Jason's behavior. A five-day trial was held. At the close of evidence, American Family moved for a directed verdict on a number of grounds, including that Nieuwendorp failed to demonstrate how her conduct or school procedure would have been different had the Heins notified the school that Jason was no longer on Dexedrine. The circuit court denied the motion. In its verdict, the jury found Jason 14% causally negligent, the Heins 55% causally negligent, and Nieuwendorp 31% causally negligent. American Family filed motions after verdict, claiming, among other things, that there was insufficient evidence to support the jury's verdict. Those motions were

also denied, and the circuit court found that credible evidence existed to support the verdict.

On appeal, American Family argued that Nieuwendorp failed to establish her negligence and causation claims against the Heins. Specifically, even though the Heins acknowledged they had a parental obligation to control their son, American Family argued that public policy considerations did not require the Heins to forcibly medicate Jason against their will. Consequently, they could not have been negligent when they chose not to medicate him.

By contrast, Nieuwendorp argued that the Heins' legal obligation to control Jason required them either to continue to medicate Jason, to inform themselves about the consequences of discontinuing Dexedrine and alternatives to that form of treatment, or to inform the school that Jason was no longer on Dexedrine so other treatment and educational modes could have been developed and implemented. By not taking those precautions, according to Nieuwendorp, the Heins were negligent in failing to control Jason, and Nieuwendorp suffered her injuries.

The court of appeals reversed the judgment of the circuit court and concluded that "the jury could only speculate whether Jason's further consultation with a physician or warning to the school of the discontinuance of medication would have prevented Nieuwendorp's injury." *Nieuwendorp,* 181 Wis. 2d at 267–68. Therefore, the court of appeals concluded that the circuit court erred when it failed to grant American Family a directed verdict. As a result of this holding, the court of appeals stated that it was unnecessary to evaluate whether Nieuwendorp established the Heins' negligence by credible evidence.

We agree with the court of appeals that the standard of review on sufficiency of the evidence is that

> [a] jury's apportionment of negligence and its award of damages will be sustained if there is any credible evidence that supports the verdict, sufficient to remove the question from the realm of conjecture. To reverse, this court must conclude that there is such a complete failure of proof that the verdict must have been based on speculation.

*Gonzalez v. City of Franklin,* 137 Wis. 2d 109, 134, 403 N.W.2d 747 (1987). Further, the reviewing court's consideration of the evidence (a) must be done in a light most favorable to the verdict;[2] and (b) "when more than one inference may be drawn from the evidence presented at trial, this court is nevertheless bound to accept the inference drawn by the jury." *Id.* This standard of review becomes even more appropriate when the jury's verdict has the approval of the circuit court. *See Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305, 347 N.W.2d 595 (1984); *Stanhope v. Brown County,* 90 Wis. 2d 823, 853, 280 N.W.2d 711 (1979) (special weight is given the jury's finding when it has the specific approval of the trial court).

However, we disagree with the court of appeals' conclusion that any inferences drawn by the jury in this case could have been based only on speculation. Thus, our review, like that of the court of appeals, focuses upon whether the jury could reasonably have concluded that the Heins' conduct in failing to (a) inform themselves about the consequences of discontinuing Jason's medication and about alternative

[2] *Id.; see also Krueger v. Mitchell,* 112 Wis. 2d 88, 105, 332 N.W.2d 733 (1983).

472

treatments or (b) warn Jason's school that he was no longer on the medication so that the school, in conjunction with the Heins, could have jointly developed a plan to manage Jason's behavior, was a substantial factor in causing Nieuwendorp's injuries.

## THE HEINS WERE NEGLIGENT IN FAILING TO CONTROL JASON

In *Seibert v. Morris,* 252 Wis. 460, 463, 32 N.W.2d 239 (1948), this court adopted 2 *Restatement of the Law of Torts,* § 316 (1934),[3] which provided:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>     (a)   knows or has reason to know that he has the ability to control his child, and
>     (b)   knows or should know of the necessity and opportunity for exercising such control.

Again in *Bankert,* 110 Wis. 2d at 477, this court discussed the tort of negligent control[4] and stated: "[T]he parent who has failed to exercise proper control is treated as a joint tortfeasor, whose separate act of neg-

---

[3] In *Restatement (Second) Torts,* § 316 (1964), the American Law Institute adopted the same language used in 1948.

[4] Parental liability can also be imposed for negligent entrustment in a situation where a parent negligently entrusts a child with an instrumentality which may become a source of danger to others. In the first Wisconsin negligent entrustment case, *Hopkins v. Droppers,* 184 Wis. 400, 198 N.W. 738 (1924), 191 Wis. 334, 210 N.W. 684 (1926), the court recognized the general rule that some form of participation by a parent in respect to a tort of a minor child is an essential predicate for parental liability.

ligence, for the imposition of liability, only becomes relevant upon the negligent act and injury by the child, who should have been subject to proper control."

In this case, the jury was presented with the following evidence:

(1) In 1988, the Heins sought medical advice regarding academic and behavioral problems initially exhibited by Jason while in the first grade;

(2) Jason was diagnosed as suffering from ADHD, and Dexedrine was prescribed as a means of treatment for the condition;

(3) The Heins purchased the medication and administered it to Jason for approximately seven months during 1988–89 before they unilaterally decided to stop giving it to Jason; and

(4) The Heins were initially pleased with the medication's effects on Jason's behavior, though when they became increasingly worried about possible side effects, they discontinued the medication without informing themselves about alternative forms of treatment. Further, the Heins did not talk to anyone at the school about the fact that Jason's behavioral problems might recur, so that the school, in conjunction with the Heins, could develop a plan to manage Jason's behavior. Based upon this evidence, we agree with the circuit court that it was proper for the jury to consider the question of whether the Heins were negligent in their failure to control Jason.

Under the circumstances of this case, American Family correctly argues that the Heins' decision to take their son off medication does not constitute negligence. Nevertheless, the Heins did have to take reasonable steps to control Jason's behavior. "Each individual is held, at the very least, to a standard of ordinary care in

all activities." *Coffey v. Milwaukee,* 74 Wis. 2d 526, 537, 247 N.W.2d 132 (1976). Applying this standard to the instant case, it was reasonable for the jury to conclude from the evidence that the Heins were negligent when they failed to inform themselves either about the consequences of discontinuing Dexedrine or about alternative forms of treatment. That negligence encompassed the Heins' decision not to notify Jason's school that the medication was discontinued so that, in conjunction with the Heins, a plan to manage Jason's behavior could have been developed.

## THE HEINS' FAILURE TO EXERCISE REASONABLE CARE TO CONTROL JASON'S BEHAVIOR WAS A SUBSTANTIAL FACTOR IN CAUSING NIEUWENDORP'S INJURIES

Four elements must be present to sustain a cause of action for negligence: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Coffey,* 74 Wis. 2d at 531. Concluding that the Heins failed to control Jason's behavior, the jury could find the Heins negligent only if their conduct was causal of Nieuwendorp's injuries. "The test of cause in Wisconsin is whether the defendant's negligence was a substantial factor in producing the injury." *Clark v. Leisure Vehicles, Inc.,* 96 Wis. 2d 607, 617, 252 N.W.2d 630 (1980). The negligent conduct need not be the sole or primary factor, only a substantial factor. *Id.*

We conclude that there was credible evidence to support the jury's finding that the Heins' failure to inform themselves about the consequences of discon-

tinuing the medication and alternative treatments or to warn Jason's school that he was no longer on the medication so that the school, in conjunction with the Heins, could have jointly developed a plan to manage Jason's behavior was a substantial factor in causing Nieuwendorp's injuries. The jury had the opportunity to hear the testimony of child psychologist and defense witness Dr. Gina Koeppl. Dr. Koeppl's practice focuses upon disorders of behavior in children, disorders of learning, and ADHD. Her first contact with Jason and his parents was on December 4, 1989, approximately two months after the incident in which Nieuwendorp was injured.[5] During the trial, Dr. Koeppl testified that: (a) Jason suffered from ADHD; (b) Dexedrine is but one form of treatment for ADHD; (c) alternatives to medication are available, including individual psychotherapy and behavior management consultation for home and school; (d) once parents are informed that medication is one of several treatment options, it is a choice for the parents and their physician as to whether the child should be medicated; and (e) it was probable that Dexedrine would have controlled Jason's disruptive behavior which required Nieuwendorp to come to Jacobson's classroom.

---

[5] The Heins had decided to take Jason to see Dr. Koeppl in December. During their first appointment, they informed Dr. Koeppl of Jason's school behavior problems as well as his educational history. Dr. Koeppl then scheduled three subsequent appointments in order to conduct psychological assessments of Jason. Her diagnosis was the same as that which the Heins received at the Marshfield Clinic: Jason suffered from ADHD. In January, 1990, Dr. Koeppl met with the Heins and the school staff in order to discuss behavior modification strategies, as well as how to facilitate communication between the parents and the school regarding any programs implemented on Jason's behalf.

Another defense witness, Dr. Richard S. Amado, a psychologist who has had experience working with schools and community programs which serve people with special needs, testified that his objective in a situation involving a student like Jason would be "to work with the school so that it would be able to work with Jason more effectively . . .." During his testimony, Dr. Amado stated his opinions concerning the conduct of Nieuwendorp and the Heins. For example, Dr. Amado felt it was highly likely that the incident on October 6, 1989, would have occurred regardless of whether Jason was taking the Dexedrine because the techniques Nieuwendorp used in order to remove Jason from the classroom created a threatening social and physical environment to which Jason responded. However, Dr. Amado conceded that even though he was not critical of the Heins for taking Jason off the Dexedrine, he was critical of their decision not to inform Dr. Zerfas or the school of that decision since it then becomes difficult, if not impossible, for the parties to work together on the problem.

Nieuwendorp introduced evidence about Jason's behavior during the year following the incident. Specifically, while Jason was in the fifth grade and not taking any medication, he again experienced behavioral problems. Mrs. Hein was called to the school, and the issue of Jason's problems was discussed. Mrs. Hein then worked with Jason on his behavior. As a result, his academic progress reports reflected marked behavioral improvement.

Could the jury reasonably conclude that the Heins were causally negligent based upon credible evidence introduced at trial? We believe it could. The jury heard that it was probable that the incident in the classroom would not have occurred if Jason had been taking his

medication. The jury also heard two psychologists testify that behavior modification was certainly a reasonable alternative treatment to the medication. In fact, Dr. Amado testified that he believed effective behavior modification was even a better alternative than medicating Jason. The jury knew that, after discontinuing the medication and prior to the incident, the Heins failed to consult either with doctors or with the school so as to develop effective behavior modification techniques for Jason. Finally, the jury knew that while Jason was in the fifth grade, the Heins worked with Jason to modify his behavior when the school notified them of any problems.

We therefore conclude that the jury's finding that the Heins' negligence was a substantial factor in causing Nieuwendorp's injuries was predicated upon credible evidence and that the court of appeals erred when it found that the verdict was based upon speculation.

## PUBLIC POLICY CONSIDERATIONS

██

American Family makes a two-pronged public policy argument. It first asserts:

> We should not live in fear of being sued over our personal medical treatment decisions. 1) Parents should not be required to control their children's behavior by involuntary medication. 2) Patients should be allowed to make medical treatment decisions without the fear of being sued. 3) Patients should not be required to divulge their medical treatment decisions to third parties.

These concerns are easily addressed and simply are not implicated in this opinion. The opinion should not be read as according these concerns a status of affirmative

duties. On the contrary, this opinion merely stands for the proposition that when there is any credible evidence to support a jury's verdict, sufficient to remove the question from the realm of conjecture, the verdict will be sustained. *See Gonzalez,* 137 Wis. 2d at 134. Because there is credible evidence to support the jury's verdict in this case, the verdict should be upheld.

■

The more difficult task is to determine whether, as American Family next posits, there are specific public policy reasons for not imposing liability in this case. In *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 737, 275 N.W.2d 660 (1979), this court set forth several examples of public policy considerations that would preclude liability despite a finding of negligence as a substantial factor in producing the injury at hand:

> (1)   The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because the allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

American Family argues that examples (1), (4) and (6) apply to preclude liability in this case. While the court is sympathetic to these concerns in general, nonetheless, they also are not applicable in this case.

First, the injury in this case is not too remote from the negligence. Nieuwendorp and the school administration were under the impression that Jason was being treated for ADHD. The Heins unilaterally, and

without informing school administration, chose to cease treating Jason for the disorder. By discontinuing the treatment, it was likely that a symptom of ADHD, such as uncooperativeness and striking out, might manifest itself in Jason. Here, Jason had a classic episode related to ADHD. It was not at all remote that an incident of this sort might result in danger to those working with him.

Second, imposing liability in this case would not place too unreasonable a burden on persons such as Jason and his parents. On the contrary, it is reasonable to conclude that the Heins should have considered the ramifications of their actions of not informing school administrators of their unilateral decision to cease medicating Jason with Dexedrine or of considering alternative treatment options for Jason's ADHD. This case does not stand for the proposition that parents must forcibly medicate their hyperactive children in order for the children to attend public school. Rather, it is a natural extension of the principle that recognizes parents' responsibility to exercise reasonable control over their children so as to prevent harm to others.

As to the third example, American Family argues that "there would be no just stopping point because an affirmative duty on parents to chemically control their children could conceivably include every tort committed by every child. This could potentially open a flood gate of new litigation and create a cause of action where there should not be one." American Family's predictions of legal chaos notwithstanding, we are not persuaded that our decision today will have this effect on the law. This belief is based upon the perception that the case at hand is very fact-specific and cannot be read to force parents to medicate their children against their will. Here, the Heins simply had to notify the

school administration that Jason's medication for the ADHD was being discontinued so that a plan to manage Jason's behavior could have been developed.

In conclusion, (1) the Heins were negligent in failing to control Jason; (2) their negligence was a substantial factor in causing Nieuwendorp's injuries; and (3) no public policy considerations preclude a finding of liability on the part of the Heins in this case.

*By the Court.*—The decision of the court of appeals is reversed.