Susan MALONE, Plaintiff-Joint-Appellant,†

v.

Daniel G. GAENGEL and Elizabeth Gaengel,
Defendants-Joint-Appellants,

WEST BEND MUTUAL INSURANCE COMPANY, Defendant-
Respondent.

Court of Appeals

*No. 98–1001–FT. Submitted on briefs June 8, 1998.—Decided
July 21, 1998.*

(Also reported in 583 N.W.2d 882.)

†Petition to review denied.

On behalf of the plaintiff-joint-appellant, the cause was submitted on the briefs of *John C. Cabaniss* of the *Law Office of John C. Cabaniss*, of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Eric S. Darling* of *Schmidt, Darling & Erwin*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J.   Susan Malone appeals from summary judgment dismissing her complaint against West Bend Mutual Insurance Company.[1] We affirm.

## I.

The facts material to this appeal are not in dispute. Malone's ten-year-old son Jason died when a three-wheel all-terrain vehicle on which he was riding rolled over and crushed him. The vehicle was driven by his cousin, twelve-year-old Damian Gaengel, the son of Daniel G. and Elizabeth Gaengel. Mr. and Mrs. Gaengel are Jason Malone's uncle and aunt. At the time of the accident, the Gaengels were insured under a West Bend "Family Home and Highway" policy. (Uppercasing omitted.)[2] As can be surmised from the

---

[1] Daniel G. and Elizabeth Gaengel have joined in Malone's appeal, but have not filed a brief.

[2] Uppercasing and bolding omitted from all quotations from the policy.

title, the policy combined homeowner's insurance and automobile insurance, for which separate premiums were assessed. The annual premium for the homeowner's portion of the policy was $232; the annual premium for the automobile-insurance portion of the policy was $1,857.

Malone's complaint against the Gaengels and West Bend alleged that the Gaengels negligently permitted Damian to drive the all-terrain vehicle, and negligently did not make Jason wear a helmet. The complaint also alleged that the Gaengels' West Bend policy provided coverage for the accident. No claim was asserted against Damian Gaengel.

The West Bend policy specifies the nature and extent of its "personal liability insurance" in "Section II." This section has five parts, and the policy notes: "We have separated the categories under which this coverage will apply and what the limitations are."[3] Part B applies to "motor vehicle liability," and provides liability coverage for recreational vehicles owned by the Gaengels and listed on the policy's declarations page. It also provides coverage of other recreational vehicles (that is, either non-owned or non-listed) if the accident involving them happened "while [they were] used on [the Gaengels'] premises or land covered by this policy." Part D also provides insurance coverage for recreational vehicles provided that they are owned and listed on the policy's declarations page. It is not disputed that the all-terrain vehicle driven by Damian, although owned by Daniel Gaengel, was not listed on

---

[3] They are: "Part A—Home and Personal Activities Legal Liability"; "Part B—Motor Vehicle Liability"; "Part C—Uninsured and Underinsured Motorist Coverage"; "Part D—Your Boat and Recreational Vehicle Liability Insurance"; "Part E—Medical Expenses."

the policy's declarations page. Moreover, the accident did not take place on "premises or land covered" by the Gaengels' West Bend policy. Malone does not contend that the Gaengels have liability-insurance coverage for the accident under Section II, Parts B, C, D, or E.

Part A of the policy's Section II, applies to "Home and Personal Activities Legal Liability." Malone argues that Mr. and Mrs. Gaengel have liability coverage for the accident under this provision, which, as material here, reads:

> We insure the liability of you and your family to pay because of bodily injury or property damage to others in an accident or incident that happens in your home or on your property, as listed on the Declarations Page.

> We will also cover such liability involving your personal, nonbusiness activities anywhere in the world.

The phrase "accident or incident" is defined by the policy, as relevant to this appeal, as "anything that causes . . . death." We reject Malone's attempt to find motor-vehicle-liability coverage for the Gaengels in this homeowner's-liability part of their policy.

## II.

■ Although assisted by the trial court's analysis, we review *de novo* its grant of summary judgment. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The parties concede that there are no disputed issues of fact material as to whether the West Bend policy covers the Gaengels for Jason Malone's death. Thus, we face purely legal issues and our analysis of the West Bend policy is also *de*

*novo. See Smith v. State Farm Fire & Casualty Co.*, 192 Wis. 2d 322, 328–329, 531 N.W.2d 376, 379 (Ct. App. 1995). Insurance policies are construed to give their language "its common and ordinary meaning" as that language "would be understood by a reasonable person in the position of the insured." *Id.*, 192 Wis. 2d at 329, 531 N.W.2d at 379.

As we have seen, the West Bend policy provision relied on by Malone provides liability coverage for "an accident or incident" "involving [the Gaengels'] personal, nonbusiness activities anywhere in the world." As noted, "accident or incident" means, as relevant here, "anything that causes . . . death." Malone's complaint claims that the Gaengels are liable for her son Jason's death because they negligently let Damian drive the all-terrain vehicle, and they negligently did not make Jason wear a helmet. The crux of this appeal is thus whether either of these acts or omissions, in the words of the West Bend policy, "cause[d]" Jason's "death." Under *Bankert v. Threshermen's Mutual Ins. Co.*, 110 Wis. 2d 469, 329 N.W.2d 150 (1983), and *Smith*, the answer to this question is "no."

*Bankert* decided whether there was coverage under a farm policy for an off-farm motorcycle accident. *Id.*, 110 Wis. 2d at 471–472, 479–481, 329 N.W.2d at 151, 154–155. The Threshermen's policy did not provide coverage for the use of automobiles and motorcycles "while away from the premises or the ways immediately adjoining." *Id.*, 110 Wis. 2d at 479, 329 N.W.2d at 154 (internal quotation marks omitted). The Bankerts' fifteen-year-old son was injured when a motorcycle driven by the policyholders' son, who was also fifteen, crashed into a car in the city of Watertown. *Id.*, 110 Wis. 2d at 472, 329 N.W.2d at 151. There was no dispute but that the accident happened away from

the farm and "the ways immediately adjoining." *Id.*, 110 Wis. 2d at 479, 329 N.W.2d at 154 (internal quotation marks omitted).

In an attempt to gain coverage under the Threshermen's policy, the Bankerts asserted that the policyholders were negligent in: 1) entrusting the motorcycle to the policyholders' son, and 2) negligently supervising him. *Id.*, 110 Wis. 2d at 472, 329 N.W.2d at 151. Both acts of negligence were alleged to have occurred on the farm (the insured premises) before the accident in Watertown. The Bankerts argued, as phrased by *Bankert*, that it was "not the place of the accident that controls, but rather the place of the negligent act." *Id.*, 110 Wis. 2d at 479, 329 N.W.2d at 154. The supreme court disagreed, even though the negligent acts were each, arguably, a cause of the accident; *Bankert* noted that Threshermen's insured against liability resulting from accidents, "not theories of liability." *Id.*, 110 Wis. 2d at 480, 329 N.W.2d at 155. Thus, because the accident took place in Watertown and not on or adjacent to the farm, there was no coverage. *Ibid.* Stated another way, neither negligently entrusting the policyholders' son on the farm with the motorcycle, nor failing to properly supervise him on the farm, was the event—the accident—for which there was coverage under the policy. *See Smith*, 192 Wis. 2d at 332, 531 N.W.2d at 380 (interpreting *Bankert*). As *Smith* points out, that an event may have been "a cause" ("a substantial factor") of an accident in a tort-causation sense, does not mean that insurance coverage for the accident also insures the event. *Id.*, 192 Wis. 2d at 333, 531 N.W.2d at 380–381. Rather, the event must also be an "independent concurrent cause" and "provide the basis for a cause of action in and of itself and must not require the occurrence of the excluded

risk to make it actionable." *Id.*, 192 Wis. 2d at 332, 531 N.W.2d at 380.

In *Smith*, a snowmobile driven by a State Farm policyholder collided with another snowmobile, killing one child, who was a passenger on the policyholder's snowmobile, and injuring another, who was a passenger on the other snowmobile. *Id.*, 192 Wis. 2d at 326–328, 531 N.W.2d at 378. The driver of the other snowmobile was the father of the two children. *Id.*, 192 Wis. 2d at 326–327, 531 N.W.2d at 378. The homeowner's policy did not provide coverage for the operation of a snowmobile off an "insured location," which is where the accident happened. *Id.*, 192 Wis. 2d at 326–328, 531 N.W.2d at 378.

The plaintiffs in *Smith* argued that the policyholder was negligent in driving the snowmobile while drunk and in not putting a helmet on the child who was riding with him. *Id.*, 192 Wis. 2d at 331, 531 N.W.2d at 380. They claimed that these were independent concurrent causes of the accident, and therefore there was coverage because the intoxication and the failure to make the child wear a helmet were not encompassed by the policy's exclusion from coverage for operating the snowmobile in a place not an "insured location." *Ibid.* Although *Smith* recognized that there is coverage for an insured risk even though a non-covered risk is an independent concurrent cause, the insured risk "must not require the occurrence of the excluded risk to make it actionable." *Id.*, 192 Wis. 2d at 331, 332, 531 N.W.2d at 380. Thus there was no coverage in *Smith* because "[w]ithout the operation of the snowmobile off an insured location [the excluded risk], the injury would not have occurred, intoxication and lack of a helmet notwithstanding." *Id.*, 192 Wis. 2d at 332, 531 N.W.2d at 380.

The plaintiffs in *Smith* also argued that there was coverage because the policyholder negligently maintained his snowmobile (it did not have an operable headlight), and that this act of negligence took place on the "insured location." *Id.*, 192 Wis. 2d at 327, 531 N.W.2d at 378. We rejected this argument as well, holding "that coverage is not provided by the homeowner's policy for negligent maintenance of the snowmobile where the injury-causing occurrence was the snowmobile accident." *Id.*, 192 Wis. 2d at 334, 531 N.W.2d at 381.

■

As the trial court correctly recognized under *Bankert* and *Smith*, neither letting Damian drive the all-terrain vehicle (alleged negligent entrustment) nor not making Jason wear a helmet was an independent concurrent cause of Jason's death—neither would have resulted in an all-terrain-vehicle roll-over unless Damian was negligent; Malone does not contend that the West Bend policy provides coverage for Damian's negligence. Although the Gaengels' alleged negligent acts or omissions might have been substantial factors in a tort-causation sense, *Smith* teaches that this does not determine whether there is insurance coverage: "[T]he substantial factor test does not define the risks for which coverage is afforded and does not determine whether a covered risk is independent from an excluded risk." *Smith*, 192 Wis. 2d at 333, 531 N.W.2d at 380.[4]

A reasonable insured would not expect automobile-liability coverage under his or her homeowner's policy. Indeed, although the West Bend policy provided both homeowner's coverage and motor-vehicle cover-

---

[4] In this context, it makes no difference whether a risk is "excluded" or "not covered."

age, separate premiums were assessed for each. Additionally, the policy specifically noted that it "separated the categories under which [liability] coverage will apply and what the limitations are." Thus, there was no bleed-over between the various coverages, and, as already noted, Malone does not claim that the Gaengels had coverage under their homeowner's policy for Damian's driving. Moreover, to use the homeowner's part of the West Bend policy to expand motor-vehicle-accident coverage beyond that provided under the motor-vehicle insurance part of the policy would give the Gaengels coverage for which they did not pay. *See Bankert*, 110 Wis. 2d at 479–480, 329 N.W.2d at 154 (granting coverage based on theories of liability rather than the risk for which insurance was purchased "would convert the farmowners liability policy into an automobile policy").

For the foregoing reasons, we affirm the trial court's grant of summary judgment dismissing Malone's complaint against West Bend.

*By the Court.*—Judgment affirmed.