Jessica L. SIEBERT, by her Guardian ad Litem,
D.J. Weis and Lynette A. Siebert,
Plaintiffs-Appellants,

Steve ALBRECHT, Jr., by his Guardian ad Litem,
Thomas W. Kyle, Steven Albrecht, Sr.,
Kari Sosnowski, by her Guardian ad Litem,
Thomas W. Kyle and Cyndi Anderson,
Intervening-Plaintiffs,

ONEIDA COUNTY DEPARTMENT OF SOCIAL SERVICES,
Involuntary-Plaintiff,

v.

WISCONSIN AMERICAN MUTUAL INSURANCE COMPANY,
Defendant-Respondent-Petitioner,

INTERSTATE BRANDS CORPORATION, ACE American
Insurance Company and Ryan Friberg,
Defendants.

Supreme Court

*No. 2009AP1422. Oral argument March 2, 2011.*
*—Decided May 24, 2011.*

2011 WI 35

(Also reported in 797 N.W.2d 484.)

548

For the defendant-respondent-petitioner there were briefs by *John M. Swietlik, Jr., Michael D. Aiken* and *Kasdorf, Lewis, and Swietlik, S.C.*, Milwaukee, and oral argument by Mr. Swietlik.

For the plaintiff-appellant there was a brief by *D.J. Weis, Rhonda Lanford,* and *Habush, Habush & Rottier, S.C.*, Rhinelander, and oral argument by Ms. Lanford.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals, *Siebert v. Wisconsin American Mutual Insurance Co.,* 2010 WI App 94, 325 Wis. 2d 740, 787 N.W.2d 54, that reversed an order of the Oneida County Circuit Court[1] granting summary judgment in favor of Wisconsin American Mutual Insurance Company (Wisconsin American) and dismissing the plaintiffs' direct action claim for negligent entrustment. Based upon its earlier determination that the insurance policy issued by Wisconsin American did not cover the driver's alleged negligent operation of the vehicle, the circuit court concluded that the policy likewise does not cover the plaintiffs' negligent entrustment claim.

¶ 2. Two of the plaintiffs, Jessica Siebert and her mother, Lynette Siebert (collectively, Siebert),[2] appealed, and the court of appeals reversed.

¶ 3. We granted Wisconsin American's petition for review. We now reverse the decision of the court of appeals.

¶ 4. Wisconsin American presents two issues for our review:

---

[1] The Honorable Patrick F. O'Melia presided.

[2] For clarity, we use Jessica Siebert and Lynette Siebert's full names when referring to them individually.

(1) Does the alleged negligent entrustment of the vehicle constitute an independent concurrent cause of Jessica Siebert's injuries sufficient to trigger coverage under Wisconsin American's insurance policy when no coverage exists for the driver's alleged negligent operation of the vehicle?

(2) Is Siebert's negligent entrustment claim barred by claim or issue preclusion by virtue of the fact that Siebert asserted the claim against Wisconsin American after the circuit court entered judgment on the jury verdict dismissing with prejudice Siebert's original complaint against Wisconsin American?

¶ 5. We conclude that the alleged negligent entrustment of the vehicle does not constitute an independent concurrent cause of Jessica Siebert's injuries sufficient to trigger coverage, when no coverage exists for the alleged negligent operation of the vehicle. Specifically, the alleged negligent entrustment of the vehicle is not actionable without the occurrence of an excluded risk—the alleged negligent operation of the vehicle. Therefore, there is no coverage for Siebert's negligent entrustment claim, and Wisconsin American is entitled to summary judgment.

¶ 6. Our conclusion that Wisconsin American is entitled to summary judgment by virtue of the lack of coverage for Siebert's negligent entrustment claim is dispositive in this case. Accordingly, we do not reach the issue of whether Siebert's negligent entrustment claim is barred by claim or issue preclusion.

## I. FACTUAL BACKGROUND

¶ 7. On June 17, 2006, Jessica Koehler (Koehler) gave permission to her boyfriend, Jesse Raddatz (Raddatz), to drive her father's 1996 Chevrolet Lumina to a food pantry in Eagle River, the city in which Koehler

and Raddatz lived. Koehler advised Raddatz that he and his friend "could use [the vehicle] as long as they went to the Food Pantry and came right back . . . ."

¶ 8. Raddatz did not use the vehicle to drive to the food pantry. Instead, Raddatz and his friend picked up four more passengers, including Jessica Siebert, and headed to a party in Rhinelander.

¶ 9. While traveling south on two-lane Highway 17, Raddatz approached a Hostess truck also traveling south. The Hostess truck was nearing the intersection of Highway 17 and County Road A in the township of Sugar Camp. A passing lane to the right of southbound Highway 17 gave vehicles the opportunity to pass those vehicles turning left onto County Road A. According to deposition testimony, Raddatz attempted to pass the Hostess truck on the right when the truck suddenly swerved in and out of the passing lane. Raddatz lost control of the vehicle and drove into the ditch, causing the vehicle to roll. Raddatz and four of the other five passengers, including Jessica Siebert, were ejected from the vehicle.

¶ 10. Raddatz and one other passenger were killed in the accident. The other four passengers were injured, Jessica Siebert severely.

¶ 11. The vehicle was insured by Wisconsin American through an automobile insurance policy issued to Koehler's father.

## II. PROCEDURAL POSTURE

¶ 12. On February 14, 2007, Siebert filed a direct action[3] against Wisconsin American, alleging that Raddatz's negligent operation of the vehicle caused

---

[3] *See* Wis. Stat. § 632.24 (2005–06) ("Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to the amounts stated in the bond or policy, to

Jessica Siebert to sustain serious injuries. The complaint further alleged that Jessica Siebert's injuries, in turn, caused Lynette Siebert to suffer the loss of her daughter's society and companionship and to incur medical expenses.

¶ 13. On May 9, 2007, two other surviving passengers (the intervening plaintiffs) filed an intervening complaint against Wisconsin American and similarly alleged Raddatz's negligent operation of the vehicle.

¶ 14. Wisconsin American answered both complaints by, *inter alia,* raising an affirmative defense that Raddatz exceeded the scope of permission to use the vehicle and therefore did not qualify as an insured under the policy issued to Koehler's father.

¶ 15. Wisconsin American moved the circuit court to bifurcate the issue of insurance coverage from the underlying issues of liability and damages.[4] The circuit court granted Wisconsin American's motion.[5]

---

the persons entitled to recover against the insured for the death of any person or for injury to persons or property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.").

All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

[4] *See* Wis. Stat. § 803.04(2)(b) (permitting the circuit court to "direct[] and conduct[] separate trials on the issue of liability to the plaintiff or other party seeking affirmative relief and on the issue of whether the insurance policy in question affords coverage").

[5] Thereafter, on October 12, 2007, and November 15, 2007, respectively, Siebert and the intervening plaintiffs amended their complaints to add a negligence cause of action against Ryan Friberg, the driver of the Hostess truck, and Interstate Brands Corporation, the owner of the Hostess truck. Those

¶ 16. On June 23, 2008, the coverage issue proceeded to a two-day jury trial. The jury was asked the following question: "At and immediately before the time of the accident, did Jesse Raddatz exceed the scope of permission that he was provided by Jessica Koehler to use the 1996 Chevrolet Lumina?" The jury answered, "Yes."

¶ 17. Soon after, on July 11, 2008, Siebert and the intervening plaintiffs filed a motion to amend their complaints against Wisconsin American to add a cause of action for Koehler's negligent entrustment of the vehicle to Raddatz. Wisconsin American opposed the motion, arguing that the new cause of action was barred by claim and issue preclusion.

¶ 18. On September 29, 2008, the circuit court entered judgment on the jury verdict and determined that "because Jesse Raddatz exceeded the scope of the permission that he was provided by Jessica Koehler to use the 1996 Lumina at and immediately before the time the accident occurred[,] there is no insurance coverage available under the Wisconsin American Mutual Insurance Company policy . . . ." The circuit court therefore dismissed "on the merits and with prejudice" Siebert and the intervening plaintiffs' complaints against Wisconsin American.[6]

¶ 19. Subsequent to the judgment, however, the circuit court granted Siebert and the intervening plaintiffs' motion to amend their complaints. Siebert and the intervening plaintiffs then each filed a second amended complaint, asserting a cause of action against Wisconsin

defendants and Wisconsin American then asserted cross-claims against each other for contribution. Friberg and Interstate Brands Corporation are not parties to this appeal.

[6] The circuit court similarly dismissed all cross-claims against Wisconsin American.

American for negligent entrustment. Specifically, the complaints alleged that Koehler entrusted her father's vehicle to Raddatz with full knowledge of the fact that Raddatz did not have a valid driver's license. As such, the complaints alleged, Koehler knew, or in the exercise of ordinary care should have known, that Raddatz intended or was likely to use the vehicle in a way that would create an unreasonable risk of harm to others. The complaints further asserted that Koehler's negligent entrustment was "a separate and distinct act of negligence from Jesse Raddatz'[s] negligent operation of the vehicle."

¶ 20. Wisconsin American moved for summary judgment, arguing that there is no coverage under the policy for Koehler's alleged negligent entrustment. Specifically, Wisconsin American maintained that Koehler's act of entrusting the vehicle to Raddatz is not an independent concurrent cause of the injuries suffered by Jessica Siebert and the intervening plaintiffs; that is, Koehler's act requires the occurrence of a non-covered risk—Raddatz's negligent operation of the vehicle—to be actionable.

¶ 21. Alternatively, Wisconsin American argued that the jury's finding that Raddatz exceeded the scope of permission prevents Siebert and the intervening plaintiffs from being able to relitigate and prove an element of negligent entrustment, namely, whether Koehler permitted Raddatz to operate her father's vehicle.

¶ 22. On April 2, 2009, the circuit court held a hearing on Wisconsin American's motion for summary judgment and then granted the motion on April 20, 2009. The circuit court determined that coverage is not available under the policy for Koehler's alleged negligent entrustment. In particular, applying this court's decision in *Bankert v. Threshermen's Mutual Insurance*

*Co.*, 110 Wis. 2d 469, 329 N.W.2d 150 (1983), the circuit court agreed with Wisconsin American that Koehler's alleged negligent entrustment does not constitute an independent concurrent cause of the injuries suffered by Jessica Siebert and the intervening plaintiffs:

> Siebert's claim for negligent entrustment is dependent upon Raddatz's negligent operation of the vehicle. The alleged negligence of Raddatz is not covered under the policy pursuant to the jury's finding last summer when they found that Raddatz exceeded the scope of permission. And so Raddatz's negligent operation of the vehicle is an excluded risk. And because the negligent entrustment claim against Koehler requires the occurrence of Raddatz's negligence and because a claim for Raddatz's negligence is excluded under the policy, the alleged negligent entrustment by Koehler is not an independent concurrent cause.

¶ 23. Siebert appealed,[7] and the court of appeals reversed, holding that there is coverage for Koehler's alleged negligent entrustment. *Siebert,* 325 Wis. 2d 740. The court of appeals concluded that the independent concurrent cause rule does not apply in this case because Koehler's alleged negligent entrustment does not implicate an excluded risk. *Id.*, ¶ 7.

¶ 24. The court of appeals began its analysis by drawing a distinction between lack of coverage and an "excluded risk." *Id.*, ¶ 8. In this case, the court of appeals explained, the fact that the policy does not cover Raddatz's negligent operation of the vehicle does not mean that the policy excludes the risk. *Id.* "The [independent concurrent cause] rule is concerned not with who is covered for their actions, but with whether

---

[7] The intervening plaintiffs did not appeal from the circuit court's order granting summary judgment to Wisconsin American.

the *risk* is one the policy insures." *Id.*, ¶ 10. The court of appeals concluded that Koehler's alleged negligent entrustment is a risk insured under the policy: "Raddatz's own negligence may be excluded from coverage, but the risk associated with Koehler lending her car to him is not." *Id.*, ¶ 11; *see also Id.*, ¶ 9. Accordingly, the court of appeals reasoned, the independent concurrent cause rule does not apply. *Id.*, ¶ 11.

¶ 25. The court of appeals also rejected Wisconsin American's argument that Siebert's negligent entrustment claim is barred by claim preclusion. *Id.*, ¶¶ 12–13. The court of appeals explained that Siebert's ability to prove Koehler's negligent entrustment does not bear on whether Koehler permitted Raddatz to use the vehicle in the specific manner he did. *Id.*, ¶ 13.

¶ 26. Wisconsin American petitioned this court for review, which we granted on October 27, 2010. We now reverse.

## III. STANDARD OF REVIEW

¶ 27. In this case, the circuit court granted summary judgment to Wisconsin American. Whether the circuit court properly granted summary judgment presents a question of law that this court reviews de novo, applying the well-established standards set forth in Wis. Stat. § 802.08. *Tatera v. FMC Corp.*, 2010 WI 90, ¶ 15, 328 Wis. 2d 320, 786 N.W.2d 810. Pursuant to § 802.08(2), summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

¶ 28. The issue of insurance coverage is often addressed through a motion for summary judgment. The interpretation of an insurance contract is a question of law that we review independently. *Froedert Mem'l Lutheran Hosp., Inc. v. Nat'l States Ins. Co.*, 2009 WI 33, ¶ 33, 317 Wis. 2d 54, 765 N.W.2d 251.

## IV. ANALYSIS

¶ 29. In this case, Siebert alleges that Koehler negligently entrusted her father's vehicle to Raddatz. Siebert seeks coverage for her claim under the automobile insurance policy issued to Koehler's father.

¶ 30. We, like the circuit court, conclude that there is no coverage under the policy for Siebert's negligent entrustment claim. Specifically, we conclude that Koehler's alleged negligent entrustment does not constitute an independent concurrent cause of Jessica Siebert's injuries sufficient to trigger coverage, when no coverage exists for Raddatz's alleged negligent operation of the vehicle. We arrive at our conclusion by first considering the relevant policy language and then applying the independent concurrent cause rule to the facts of this case.

A. Wisconsin American's Automobile Insurance Policy

¶ 31. To determine whether Siebert may recover for her negligent entrustment claim under the automobile insurance policy issued to Koehler's father, we begin with the language of the policy. *See Zarder v. Humana Ins. Co.*, 2010 WI 35, ¶ 25, 324 Wis. 2d 325, 782 N.W.2d 682. "The court's goal in construing an

insurance policy is to determine and carry out the intentions of the parties." *Id.*, ¶ 26. In doing so, we give the policy language its common and ordinary meaning, that is, the meaning understood by a reasonable person in the position of the insured. *State Farm Mut. Auto. Ins. Co. v. Langridge,* 2004 WI 113, ¶ 14, 275 Wis. 2d 35, 683 N.W.2d 75. At the same time, "we do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium." *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.,* 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65.

¶ 32. In this case, the policy's initial grant of liability coverage provides that Wisconsin American "will pay damages an insured person is legally liable for because of bodily injury and property damage due to the use of a car or utility trailer."

¶ 33. The initial grant of coverage, in turn, implicates several definitions. The policy defines "car," in relevant part, as "[the policyholder's] insured car . . . ." The parties do not dispute that the 1996 Chevrolet Lumina owned by Koehler's father and driven by Raddatz on the day of the accident is an insured car under the policy.

¶ 34. In addition, the policy defines "bodily injury" as "bodily injury to or sickness, disease or death of any person." It is clear that Jessica Siebert's injuries constitute "bodily injury."

¶ 35. For purposes of liability coverage, the policy defines "insured person," in relevant part, as "[the policyholder] or a relative" and as "[a]ny person using [the policyholder's] insured car." There is no dispute that Koehler, the policyholder's daughter, qualifies as an "insured person."

¶ 36. However, relevant to this case, the policy expressly excludes from the definition of "insured person" "[a]ny person using a vehicle with the permission of the person having lawful possession, but who exceeds the scope of that permission." There is no question that the exclusion applies in this case. Pursuant to the circuit court's September 29, 2008, judgment on the jury verdict, Raddatz does not qualify as an "insured person" because he exceeded the scope of Koehler's permission when he drove the 1996 Chevrolet Lumina to Rhinelander. Because Raddatz does not qualify as an "insured person," his alleged negligent operation of the vehicle falls outside the scope of the policy's initial grant of coverage.[8] Stated otherwise, Raddatz's alleged negligent operation of the vehicle constitutes an excluded risk under the policy.[9]

---

[8] The dissent repeatedly asserts that the circuit court determined only that Raddatz is not an "insured person" under the policy, *see, e.g.,* dissent, ¶¶ 60, 67, 70, 71, 81, and that such a determination does not amount to a conclusion that there is no coverage for Raddatz's alleged negligent operation of the vehicle, *see id.,* ¶¶ 70, 71, 81. That is simply not accurate. The jury found that Raddatz exceeded the scope of permission that he was provided by Koehler to use the 1996 Chevrolet Lumina. *See supra* ¶ 16. The circuit court then entered judgment on the jury verdict and concluded, as a matter of law, that there is no coverage for Raddatz's negligent operation of the vehicle because he exceeded the scope of permission to use the vehicle. *See supra* ¶ 18. Consequently, the circuit court dismissed Siebert and the intervening plaintiffs' complaints against Wisconsin American, in which they claimed that Raddatz negligently operated the vehicle. That judgment was never appealed from and now stands.

[9] The court of appeals drew a distinction between lack of coverage and an excluded risk, explaining that "[a]n excluded risk is a risk for which the insurance company did not receive a premium." *Siebert v. Wis. Am. Mut. Ins. Co.*, 2010 WI App 94, ¶ 8,

559

¶ 37. However, as previously mentioned, it is undisputed that Koehler qualifies as an "insured person" under the policy. Thus, in order to resolve whether Siebert's negligent entrustment claim falls within the scope of the policy's initial grant of coverage, we must determine whether "[Koehler] is legally liable for . . . [Jessica Siebert's] bodily injury . . . due to the use of [the 1996 Chevrolet Lumina] . . . ."[10]

¶ 38. In *Bankert,* this court established that the act of entrusting a vehicle to another may constitute an exercise of "use" of the vehicle. 110 Wis. 2d at 480. Accordingly, in this case, we assume without deciding that Koehler's entrustment of the 1996 Chevrolet Lumina constitutes "use" of the vehicle. It follows that Koehler's alleged negligent entrustment of the 1996 Chevrolet Lumina is a covered risk under the policy.

¶ 39. Nevertheless, in this case, Wisconsin American maintains that there is no coverage for Koehler's alleged negligent entrustment of the vehicle to Raddatz

325 Wis. 2d 740, 787 N.W.2d 54 (citing *Lawver v. Boling,* 71 Wis. 2d 408, 422, 238 N.W.2d 514 (1976)). The court of appeals seemed to suggest that while an insurance company *does not* receive a premium for an excluded risk, the insurance company *does* receive a premium for a risk that is not covered. We reject such a distinction. An insurance company does not receive a premium for any risk that is not covered under the policy, whether the risk is expressly excluded or simply not covered in a particular case. *See Malone v. Gaengel,* 221 Wis. 2d 92, 99 n.4, 583 N.W.2d 882 (Ct. App. 1998).

For example, in this case, it is true that the risk of negligently operating an insured vehicle is not itself excluded under the policy. Nevertheless, Raddatz's alleged negligent operation of the vehicle is an excluded risk, by virtue of the fact that he drove the vehicle outside the scope of permission.

[10] The policy defines "use" as "ownership, maintenance, or use."

because it requires the occurrence of an excluded risk —namely, Raddatz's alleged negligent operation of the vehicle—to be actionable.[11] In other words, Wisconsin American argues that Koehler's alleged negligent entrustment is not an independent concurrent cause of Jessica Siebert's injuries sufficient to trigger coverage. We agree.

### B. Independent Concurrent Cause Rule

■

¶ 40. The independent concurrent cause rule provides that "[w]here a policy expressly insures against loss caused by one risk but excludes loss caused by another risk, coverage is extended to a loss caused by the insured risk even though the excluded risk is a contributory cause." *Kraemer Bros., Inc. v. U.S. Fire Ins. Co.*, 89 Wis. 2d 555, 570, 278 N.W.2d 857 (1979). However, in order to trigger coverage, "[t]he 'independent concurrent cause must provide the basis for a cause of action in and of itself and must not require the occurrence of the excluded risk to make it actionable.'" *Estate of Jones v. Smith*, 2009 WI App 88, ¶ 5, 320 Wis. 2d 470, 768 N.W.2d 245 (quoting *Smith v. State Farm Fire & Cas. Co.*, 192 Wis. 2d 322, 332, 531 N.W.2d 376 (Ct. App. 1995)). Stated conversely, if the covered risk is not actionable without the occurrence of an excluded risk, then the covered risk is not sufficiently independent to trigger coverage under the policy.

---

[11] *See Zarnstorff v. Neenah Creek Custom Trucking*, 2010 WI App 147, ¶ 23, 330 Wis. 2d 174, 792 N.W.2d 594 (explaining that the independent concurrent cause analysis applies once it is determined that some injury-causing conduct comes within the language of an exclusion while other injury-causing conduct does not).

¶ 41. In this case, the question is whether the covered risk, Koehler's alleged negligent entrustment of her father's vehicle, is actionable without the occurrence of the excluded risk, Raddatz's alleged negligent operation of the vehicle. The answer is no.

¶ 42. In regards to negligent entrustment of a vehicle specifically, liability can arise when a person who has a vehicle under his or her control permits another to use the vehicle when he or she knows, or should know, that the other person intends or is likely to use the vehicle in a manner that would create an unreasonable risk of harm to others. *Bankert,* 110 Wis. 2d at 475–76; *see also* Restatement (Second) of Torts § 308 (1965). This court has expressly held that while negligent entrustment constitutes an independent act of negligence, that negligence is nonactionable in the absence of a negligent act by the entrustee. *Bankert,* 110 Wis. 2d at 478.

¶ 43. Accordingly, in *Bankert,* we concluded that the insured parents' alleged negligent entrustment of a motorcycle to their minor son was not an independent concurrent cause of the plaintiff's injuries sufficient to trigger coverage under their farmowner's liability policy, when coverage was excluded for their son's negligent operation of the motorcycle. *Id.* at 484. In that case, 15–year-old Bankert was injured while riding on a motorcycle operated by 15–year-old Mueller. *Id.* at 472. Bankert and his parents sued Mueller and his parents, claiming, *inter alia,* that Mueller negligently operated the motorcycle and that his parents negligently entrusted the motorcycle to him. *See id.* The Bankerts sought coverage for their claims under a farmowner's liability policy issued to the Muellers by Threshermen's

Mutual Insurance Company (Threshermen's). *Id.* Threshermen's denied that coverage was available, *id.,* and we agreed, *id.* at 473.

¶ 44. The farmowner's policy provided that Threshermen's " 'will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an *occurrence.*' " *Id.* at 478. The policy then defined "occurrence" as " 'an accident, including injurious exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.' " *Id.* at 478–79. However, the policy expressly excluded from coverage "the ownership, operation, maintenance or use, including loading and unloading of . . . automobiles while away from the premises or the ways immediately adjoining.' " *Id.* at 479.

¶ 45. The Bankerts conceded that coverage was excluded for Mueller's negligent operation of the motorcycle, since the motorcycle accident took place "away from the premises," that is, away from the Muellers' farm. *See id.* The Bankerts argued, however, that coverage was still afforded under the policy for Mueller's parents' alleged negligent entrustment of the motorcycle because that act took place on the farm premises. *Id.* We rejected the Bankerts' argument, concluding that there was no coverage for Mueller's parents' alleged negligent entrustment of the motorcycle because their negligent act could not render them liable without the occurrence of an excluded risk—their son's negligent operation of the motorcycle. *Id.* at 484.

¶ 46. As we explained, while negligent entrustment is a separate act of negligence, liability cannot ensue without the entrustee acting in a negligent manner and inflicting injury as a result. *Id.* at 476.

Hence, in the case of negligent entrustment of a vehicle, "it is the negligent use and operation of the vehicle by the entrustee which makes the negligent entrustment relevant at all." *Id.*

¶ 47. In concluding that there was no coverage for the Bankerts' negligent entrustment claim, we contrasted the facts in *Bankert* with those in *State Farm Mutual Automobile Insurance Co. v. Partridge,* 514 P.2d 123 (Cal. 1973). *See Bankert,* 110 Wis. 2d at 483–84.

¶ 48. In *Partridge,* the Supreme Court of California held that a homeowner's policy afforded coverage for a vehicle accident caused jointly by a covered risk, the insured's negligent modification of a pistol, and an excluded risk, the insured's negligent driving, because the former was actionable without the occurrence of the latter. 514 P.2d at 129. In that case, Partridge, an avid hunter, filed the trigger mechanism of his pistol to create a "hair trigger" action. *Id.* at 125. While driving with two friends, Partridge then used his modified pistol to hunt jackrabbits by shooting out of the moving vehicle's windows. *Id.* One of the passengers was shot and severely injured when Partridge drove his vehicle off the paved road and hit a bump, causing his pistol to discharge. *Id.* at 125–26. The injured passenger then filed suit against Partridge, claiming that Partridge's negligent modification of the pistol and negligent driving caused the passenger's injuries. *See id.* at 126–27. A dispute arose as to whether coverage was available for the accident under Partridge's homeowner's policy. *See id.* at 126, 128.

¶ 49. The homeowner's policy contained a comprehensive personal liability provision, providing coverage for " 'all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance

564

applies, caused by an occurrence.' " *Id.* at 126 n.5. The policy, in turn, defined "occurrence" as " 'an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage.' " *Id.* Relevant to the facts in *Partridge,* however, the policy excluded from coverage " 'bodily injury . . . arising out of the . . . use of . . . any motor vehicle.' " *Id.* at 126 (omissions in original).

¶ 50.   Assuming that Partridge's negligent driving constituted the "use of" a motor vehicle, thereby implicating the exclusionary clause, *id.* at 128–29, the Supreme Court of California concluded that coverage was nevertheless afforded for the accident because Partridge's negligent modification of the pistol "suffice[d], in itself, to render him fully liable for the resulting injuries," *id.* at 129. Stated otherwise, Partridge's negligent modification of the pistol "exist[ed] independently of any 'use' of his car." *Id.*[12]

---

[12] For a parallel analysis, see *Estate of Jones v. Smith,* 2009 WI App 88, ¶ 9, 320 Wis. 2d 470, 768 N.W.2d 245, in which the court of appeals concluded that a commercial general liability policy afforded coverage for a two-year-old's death caused jointly by a covered risk, the day care staff's alleged negligent failure to inquire about the toddler's absence, and an excluded risk, the van driver's alleged negligent failure to remove the toddler from the transport van, because the former was actionable without the occurrence of the latter. The court of appeals explained:

> The staff has a duty to make sure that all the children who are expected to be at the Day Care Center on any given day are accounted for regardless of how they arrive at the center. Thus, the staff's alleged negligence does not require the use of an automobile to be actionable. The staff's responsibility to ensure children who are expected to attend the center that day are actually in the center exists independent of mode of arrival.

*Id.*

¶ 51. Distinguishing the facts in *Partridge* from those in *Bankert,* this court recognized that "[i]n *Partridge,* the modification of the gun could have resulted in an accident which would render the defendant liable without the involvement of an automobile." *Bankert,* 110 Wis. 2d at 484. By contrast, in *Bankert,* the parents' alleged negligent entrustment of the motorcycle could not render them liable without their son's operation of the motorcycle. *Id.*

¶ 52. Likewise, in *Malone v. Gaengel,* 221 Wis. 2d 92, 583 N.W.2d 882 (Ct. App. 1998), the court of appeals applied *Bankert* and concluded that there was no coverage for the insured parents' alleged negligent entrustment of an all-terrain vehicle (ATV) to their minor son because liability could not ensue without the occurrence of a non-covered risk—their son's negligent operation of the ATV. In *Malone,* 10–year-old Jason Malone died when an ATV operated by his 12–year-old cousin, Damian Gaengel, rolled over and crushed him. *Id.* at 93. Jason's mother filed a complaint against Damian's parents, alleging, *inter alia,* that they negligently entrusted the ATV to Damian. *Id.* at 94. No claim was asserted against Damian. *Id.*

¶ 53. Jason's mother sought coverage for the accident under a comprehensive liability policy issued to the Gaengels by West Bend Mutual Insurance Company (West Bend). *Id.* Specifically, she sought coverage under the policy's " 'Home and Personal Activities Legal Liability' " provision, which stated that West Bend will " 'insure the liability of you and your family to pay because of bodily injury or property damage to others in an accident or incident that happens in your home or on your property, as listed on the Declarations Page.' " *Id.* at 95. The policy then defined "accident or incident," in relevant part, as " 'anything that causes . . . death.' " *Id.* (omission in original).

¶ 54. It was undisputed that the policy did not cover Damian's negligent operation of the ATV; the ATV was not listed on the policy's declarations page, and moreover, the roll-over accident took place away from the Gaengels' property. *See id.* at 94–95. Consequently, applying this court's holding in *Bankert,* the court of appeals concluded that the policy also did not cover the Gaengels' alleged negligent entrustment of the ATV to Damian because that act was not an independent concurrent cause of Jason's death. *Id.* at 99. That is, the alleged negligent entrustment would not have resulted in the roll-over accident unless Damian was negligent in operating the ATV—a risk not covered under the policy. *Id.*

¶ 55. Turning to the case now before us, *Bankert* and *Malone* teach us that there is no coverage for Koehler's alleged negligent entrustment of the vehicle to Raddatz because that act is not an independent concurrent cause of Jessica Siebert's injuries. More specifically, Koehler's alleged negligent entrustment could not render her liable for Jessica Siebert's injuries without the occurrence of an excluded risk—Raddatz's alleged negligent operation of the vehicle.[13] *See*

[13] The dissent attempts to distinguish *Bankert* on the grounds that in that case, the motorcycle accident itself was excluded under the policy because it took place away from the premises. Dissent, ¶ 73. By contrast, in this case, the dissent reasons, "the exclusion leads only to a lack of coverage for Raddatz as an 'insured person,' " while coverage still exists for Koehler's alleged negligent entrustment. *Id.* However, the same type of argument was considered and then rejected by this court in *Bankert.* The Bankerts unsuccessfully argued that coverage was still afforded for Mueller's parents' alleged negligent entrustment of the motorcycle because that act, distinct from the motorcycle accident, took place on the farm premises and

*Bankert,* 110 Wis. 2d at 484; *Malone,* 221 Wis. 2d at 99. Indeed, it is Raddatz's alleged negligent operation of the vehicle that makes Koehler's alleged negligent entrustment relevant at all. *See Bankert,* 110 Wis. 2d at 476, 478.

## V. CONCLUSION

¶ 56. We conclude that the alleged negligent entrustment of the vehicle does not constitute an independent concurrent cause of Jessica Siebert's injuries sufficient to trigger coverage, when no coverage exists for the alleged negligent operation of the vehicle. Specifically, the alleged negligent entrustment of the vehicle is not actionable without the occurrence of an excluded risk—the alleged negligent operation of the vehicle. Therefore, there is no coverage for Siebert's negligent entrustment claim, and Wisconsin American is entitled to summary judgment.

¶ 57. Our conclusion that Wisconsin American is entitled to summary judgment by virtue of the lack of coverage for Siebert's negligent entrustment claim is dispositive in this case. Accordingly, we do not reach the issue of whether Siebert's negligent entrustment claim is barred by claim or issue preclusion.

*By the Court.*—The decision of the court of appeals is reversed.

---

therefore did not implicate the exclusion. *Bankert v. Threshermen's Mut. Ins. Co.,* 110 Wis. 2d 469, 479, 329 N.W.2d 150 (1983). We rejected the Bankerts' argument, concluding that there was no coverage for Mueller's parents' alleged negligent entrustment of the motorcycle because their negligent act could not render them liable without their son's negligent operation of the motorcycle. *Id.* at 484. We similarly reject the dissent's argument in this case.

¶ 58. N. PATRICK CROOKS, J. (*dissenting*). In my view, this case is controlled by a straightforward interpretation of the insurance policy language but has been complicated by arguments concerning the application of the independent concurrent cause rule. The majority opinion correctly begins with the policy language but takes a wrong turn by concluding that the circuit court's determination that Jesse Raddatz (Raddatz) is not an "insured person" under the policy is equivalent to a finding that his alleged negligent operation of the car is an excluded risk. The policy language explicitly provides coverage for Siebert's claim against Wisconsin American Mutual Insurance Company (Wisconsin American) for Koehler's alleged negligent entrustment, and no exclusion bars coverage. The analysis ends there. Therefore, I respectfully dissent.

¶ 59. This case involves direct action claims against Wisconsin American by Jessica Siebert and her mother Lynette Siebert, referred to collectively as "Siebert." Jessica Siebert suffered injuries in an auto accident involving an insured car Raddatz was driving with the permission of the insured's daughter, Jessica Koehler (Koehler). The car belonged to Koehler's father and was insured under an automobile liability policy issued by Wisconsin American.

¶ 60. Siebert's first claim against Wisconsin American, alleging that Raddatz negligently operated Koehler's father's car causing Siebert's injuries, was premised upon coverage for Raddatz as an "insured person" because Koehler gave him permission to use the car. In the coverage phase of a bifurcated trial, regarding whether Raddatz exceeded the scope of Koehler's permission, the following facts were developed. Koehler lent her father's car to Raddatz on the condition that he use it only to go to the Food Pantry and come right

back. Instead, Raddatz picked up friends, including Jessica Siebert, to go to Rhinelander. On the way to Rhinelander, Raddatz got into an accident in which he was killed and Jessica Siebert was injured. The circuit court determined, based on the jury's special verdict finding, that Raddatz is not an "insured person" under the policy because the definition of "insured person" excludes a person using an insured car who exceeds the scope of the permission. Presented with the following special verdict question, the jury responded "yes": "At and immediately before the time of the accident, did Jesse Raddatz exceed the scope of permission that he was provided by Jessica Koehler to use the 1996 Chevrolet Lumina?"

¶ 61. As a result, Siebert amended the complaint against Wisconsin American to add a second claim premised upon coverage for Koehler's alleged negligent entrustment of her father's car to Raddatz. It is coverage for this claim that is at issue in this case. The circuit court granted summary judgment in favor of Wisconsin American, concluding that there was no coverage for Siebert's negligent entrustment claim. Because there are no disputed issues of material fact regarding coverage for this claim, this court reviews whether Wisconsin American's policy provides coverage as a matter of law. *Kremers-Urban Co. v. Am. Emp'rs Ins. Co.,* 119 Wis. 2d 722, 733–34, 351 N.W.2d 156 (1984).

¶ 62. The majority appropriately begins with the language of the policy to determine whether coverage exists for Siebert's claim based on Koehler's alleged negligent entrustment. The interpretation of an insurance policy is a three-step process. Arnold P. Anderson, *Wisconsin Insurance Law* § 1.25, at 34 (6th ed. 2010). The court examines, first, whether there is an initial grant of coverage by applying the facts to the policy's

insuring agreement; second, whether any exclusions preclude coverage; and third, whether any exception to the exclusion reinstates coverage. *Id.* If the policy language provides coverage for the claim, and no exclusions apply, then coverage exists for that claim. "[W]hen the terms of an insurance policy are plain on their face, the policy must not be rewritten by construction." *Id.* (quoting *Smith v. Atl. Mut. Ins. Co.,* 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990)). "Ambiguities in coverage are to be construed in favor of coverage, while exclusions are narrowly construed against the insurer." *Smith,* 155 Wis. 2d at 811.

¶ 63.  The Wisconsin American policy provides in relevant part:

> We will pay damages an insured person is legally liable for because of bodily injury and property damage due to the use of a car or utility trailer.
>
> . . .
>
> Insured person or insured persons means:
>
> 1. You or a relative.
>
> 2. Any person using your insured car.
>
> . . .
>
> But the following are not insured persons:
>
> . . .
>
> 3. Any person using a vehicle with the permission of the person having lawful possession, but who exceeds the scope of that permission.

¶ 64.  Applying the above policy language, there is coverage for Siebert's claim that Koehler allegedly negligently entrusted the car to Raddatz, causing Siebert's

injuries. As the majority notes, it is undisputed that several elements of Siebert's claim for Koehler's alleged negligent entrustment are covered by the policy. The majority and the parties agree (1) that Koehler is an "insured person" because it is her father's policy—so under the policy language she is an "insured person" as a relative of the insured—and (2) that Koehler's father gave her possession of the car. It is also undisputed that Jessica Siebert suffered bodily injuries and the car involved in the accident was an insured car. Additionally, if Siebert can prove the elements of her negligent entrustment claim, Koehler would be legally liable for Jessica Siebert's bodily injuries caused by Raddatz's use of Koehler's father's car. The policy language does not require that the "insured person" be the person using the car, so under Siebert's negligent entrustment claim, it is Raddatz's use of the car for which the insured, Koehler, may be legally liable. Thus, the policy provides coverage for Siebert's negligent entrustment claim.

¶ 65. The only policy exclusion that is even arguably relevant is the one from the definition of "insured person" as a person using the insured car "who exceeds the scope of [the] permission." However, the jury has answered this in regard to Raddatz. Since Koehler is the "insured person" for the purposes of Siebert's negligent entrustment claim against Wisconsin American, that exclusion does not preclude coverage. As the majority notes and the parties agree, Koehler is clearly an insured person under the policy.

¶ 66. The claim we consider is Siebert's claim against Wisconsin American that Koehler allegedly negligently entrusted her father's car to Raddatz. Upon finding coverage and no relevant exclusions under the clear policy language, the analysis of coverage for that claim is complete. The majority erroneously concludes

that the circuit court's determination that Raddatz is not an "insured person" under the policy means that Raddatz's alleged negligent operation is an excluded risk.

¶ 67. Regarding Siebert's initial claim that Raddatz, as an "insured person," was legally liable for his alleged negligent operation of Koehler's car, the circuit court determined that Raddatz was not an "insured person" based on the jury's finding that he exceeded the scope of Koehler's permission to use the car. The majority concludes that "[b]ecause Raddatz does not qualify as an 'insured person,' his alleged negligent operation of the vehicle falls outside the scope of the policy's initial grant of coverage. Stated otherwise, Raddatz's alleged negligent operation of the vehicle constitutes an excluded risk under the policy." Majority op., ¶ 36 (footnotes omitted).

¶ 68. Equating the jury's finding that Raddatz exceeded the scope of Koehler's permission with a finding that Raddatz's alleged negligent operation of the vehicle is an excluded risk is unsupported by the policy language or by controlling law.

¶ 69. Regarding Siebert's subsequent claim that Koehler, as an "insured person," is legally liable for allegedly negligently entrusting her father's car to Raddatz, the jury's finding on the initial claim—that Raddatz used the car outside the scope of Koehler's permission—is irrelevant. To establish negligent entrustment, Siebert must prove that Koehler knew or should have known that Raddatz intended or was likely to use her father's car "in such a manner as to create an unreasonable risk of harm to others." *Bankert v. Threshermen's Mut. Ins. Co.,* 110 Wis. 2d 469, 476, 329 N.W.2d 150 (1983) (quoting Restatement (Second) of Torts § 308, at 100 (1965)). The *Bankert* court held that

the underlying negligent act of the entrustee is an indispensible element of a negligent entrustment claim. *Id.* at 476–77.

¶ 70. This policy does not exclude the risk of Raddatz's alleged negligent operation when Koehler, as the "insured person," allegedly negligently entrusts an insured car to him. The circuit court's determination in the coverage phase of the trial on Siebert's claim against Wisconsin American for Raddatz's alleged negligent operation of the car was only a determination that Raddatz was excluded from the definition of "insured person" under the policy. It was not a finding that Raddatz was not negligent or that his act of negligence was not covered under the policy. The jury's finding and the circuit court's determination indicate not that Raddatz's alleged negligent operation was an "excluded risk" or "not covered" under the policy, but rather that *Raddatz,* as an "*insured person,*" was not covered for *his* potential separate legal liability because he exceeded the scope of his permission from Koehler.

¶ 71. The majority concludes that a determination that a policy does not cover someone as an "insured person" is essentially a determination that there is no coverage for any of that person's acts and that the person's negligence is thus an excluded risk. This conclusion is premised upon the assumption that all policy exclusions are created equal. To the contrary, a policy that does not provide coverage for a claim because the allegedly negligent actor is not an "insured person" has a very different effect than a policy that excludes particular acts from all coverage under any claim. This is evident by comparing the policy language at issue here with the very different policy language at issue in *Bankert,* where this court held that the negligent en-

574

trustment claim could not proceed because the underlying negligent operation was an excluded risk.

¶ 72. The farmowners policy in *Bankert* was an occurrence-based policy that provided coverage for certain occurrences, defined as accidents that took place on the farm. *Id.* at 478–79. It explicitly excluded *any* coverage under the policy for any automobile accident that occurred away from the farm. *Id.* at 479. This is similar to other occurrence-based comprehensive general liability policies and distinct from automobile policies, which cover auto accidents generally. *See id.* at 479–80 (noting that construing the policy to provide coverage "*would convert the farmowners liability policy into an automobile policy*") (emphasis added). The policy exclusion in *Bankert* provided in relevant part:

> This policy does not apply . . .
>
> (b) under any of the coverages, to the ownership, operation, maintenance or use, including loading and unloading of
>
> (1) automobiles *while away from the premises* or the ways immediately adjoining.

*Id.* at 479 (emphasis added).

¶ 73. As it ought to be, the holding in *Bankert* was inextricably tied to the language of that particular policy exclusion. The motorcycle accident in *Bankert* took place off of the farm ("away from the premises"), but the plaintiff injured in that accident sought coverage for the parents' alleged negligent entrustment of the motorcycle to their son, the driver. *Id.* at 472. The policy exclusion in *Bankert* was explicit and wholesale, providing that the "policy does not apply" for accidents "away from the premises." *Id.* at 479. In this case, the policy excludes, *only from the definition of "insured*

575

*person,"* a person using an insured car who exceeds the scope of the permission. The application of the exclusion in *Bankert* created an excluded risk, while in this case the exclusion leads only to a lack of coverage for Raddatz as an "insured person." Raddatz's alleged negligent operation is still covered under a claim that Koehler, as the "insured person," allegedly negligently entrusted her father's car to Raddatz.

¶ 74. As we have noted previously, "[a]mbiguities in coverage are to be construed in favor of coverage, while exclusions are narrowly construed against the insurer." *Smith,* 155 Wis. 2d at 811. In this case, where the language in the policy indicates that coverage exists except for a claim premised upon Raddatz as an insured person, this court must interpret the policy in favor of coverage. It is Wisconsin American's argument regarding the independent concurrent cause rule that engenders unnecessary confusion in this case.

¶ 75. Unlike in *Bankert,* no excluded risk is implicated by Siebert's claim against Wisconsin American for Koehler's alleged negligent entrustment of her father's car to Raddatz. Thus, the independent concurrent cause rule should not be at issue in this case. "The independent concurrent cause rule operates to *extend* coverage 'to a loss caused by the insured risk even though the excluded risk is a contributory cause, [w]here a policy expressly insures against loss caused by one risk but excludes loss caused by another risk." *Estate of Jones v. Smith,* 2009 WI App 88, ¶ 5, 320 Wis. 2d 470, 768 N.W.2d 245 (emphasis added).

¶ 76. The majority summarily reaches the erroneous conclusion that the jury's finding that Raddatz exceeded the scope of Koehler's permission to use the car means that his alleged negligent operation is an excluded risk, by comparison to other negligent en-

trustment cases such as *Bankert,* where starkly different policy exclusions were applied. This error is compounded by the majority's reliance on the independent concurrent cause rule to bar coverage, which takes up a large part of the analysis. As noted above, the independent concurrent cause rule extends coverage; the rule does not bar coverage where the policy language provides it, nor does it serve as a means to create an excluded risk.

¶ 77. As explained above, in *Bankert,* the allegedly negligent act itself—driving a motorcycle off of the farm—was entirely excluded from any policy coverage. *Bankert,* 110 Wis. 2d at 480. The *Bankert* court concluded that there was no coverage for a negligent entrustment claim when the negligent act or occurrence was excluded because that act was a necessary component of the negligent entrustment claim. *Id.* at 478–80. In other words, after *Bankert,* the independent concurrent cause rule cannot extend coverage to a negligent entrustment claim if, for example, the policy language provides that the underlying negligent act— driving a vehicle away from the farm property—is an excluded risk. This holding is relevant to this case only if Raddatz's alleged negligent operation of Koehler's father's car is an excluded risk. As explained above, it is not. There is coverage under Wisconsin American's policy for Siebert's claim that Koehler negligently entrusted her father's car to Raddatz.

¶ 78. As the majority notes, "[b]ased upon its earlier determination that the insurance policy issued by Wisconsin American did not cover the driver's alleged negligent operation of the vehicle, the circuit court concluded that the policy likewise does not cover the plaintiffs' negligent entrustment claim." Majority op., ¶ 1. Based on the above analysis, I am satisfied that

the circuit court's determination that there is no coverage for Siebert's negligent entrustment claim is wrong as a matter of law.

¶ 79. Because I would hold that the policy provides coverage for Siebert's negligent entrustment claim, I also briefly address Wisconsin American's argument that claim or issue preclusion bars Siebert's claim. The majority does not address these arguments because of its contrary coverage determination. Majority op., ¶ 6.

¶ 80. Issue preclusion prevents "relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in a prior action." *N. States Power Co. v. Bugher,* 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995). Claim preclusion bars the relitigation of claims that were decided in an earlier action between the same parties or the litigation of claims that could have been raised in the earlier case. *Id.* A claim is barred where (1) the same parties or their privies are involved in both actions, (2) the causes of action are identical, and (3) there has been "a final judgment on the merits." *Id.* at 551.

¶ 81. It is important to remember that there has been no trial, and thus no final judgment, on the merits of either claim in this case. The jury trial was limited to the narrow question of whether Raddatz was an "insured person" under the policy. The circuit court concluded that Raddatz was not an "insured person" since the jury found that he exceeded the scope of Koehler's permission. None of the issues of law or fact—neither those regarding Koehler's alleged negligent entrustment, nor those regarding Raddatz's alleged negligent operation— has been litigated or decided. Therefore, neither issue preclusion nor claim preclusion bars Siebert's action against Wisconsin American for Koehler's alleged negligent entrustment of her father's car to Raddatz.

578

¶ 82.   For the reasons set forth herein, I respectfully dissent.

¶ 83.   I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this dissent.